JOSEPH WEATHERLY and RHODA WEATHERLY *vs.* SUSAN MISTER, widow, BEVERLY W. MISTER, EXCR. and MARY A. MISTER.

*Construction of a Will—Punctuation; when resorted to in Construction.*

The seventh clause of the will of G. M. was in these words "Seventh—All the rest and residue of my estate, real, personal or mixed, I give and devise to my three children, Rhoda A. Weatherly, Beverly Waugh Mister and Mary A. Mister, to be equally divided between them; but if either of my said children should die prior to my decease, leaving no child or children living at the time of his or her death, in that event my surviving child or children shall be entitled to the said rest and residue of my estate, and the part which may fall to my daughter Rhoda A. Weatherly, shall be held by her as her sole and separate estate, and subject to the limitations as to her husband, and as to its further disposition contained in the third item of this will." The third item bequeathed a legacy to Rhoda A. Weatherly free from the control of her husband, and at her death to vest in any child or children she might have, and in case she died without issue surviving her, then to vest

in the testator's children surviving her, equally. The three children of the testator survived him. HELD:

That Rhoda A. Weatherly took an estate for life to her sole and separate use, with a limitation over, and not an absolute estate in the one third residue bequeathed her by the seventh clause.

In construction, punctuation may be resorted to when no other means can be found of solving an ambiguity; but not in cases where no real ambiguity exists except what the punctuation itself creates. In such cases it will not be allowed to confuse a construction otherwise clear.

APPEAL from the Circuit Court of Baltimore City.

The facts are stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ROBINSON, J.

*John H. Handy and Isaac D. Jones,* for the appellants.

The only point in the case is: " Does Rhoda A. Weatherly, by the seventh item of the will, take an absolute estate in one-third of the rest and residue, or an estate for life to her sole and separate use, and with limitations over?"

[Counsel here made an elaborate examination of the provisions of the will, and contended that it did not show a general intention of the testator to subject to one and the same limitation every thing that he gave his daughter, Rhoda. Rep.]

The clause as punctuated makes sense, is not in conflict with any other provision of the will, and in fact has no connection with any other part of it. The plain grammatical construction of the words of the will give Rhoda an absolute estate in one-third of the residue; the contingency provided for her having a different estate not having occurred. The authorities are full that if the will is clear, expressing a definite intent, rules of con-

struction are never invoked. *Fenny vs. Ewestace,* 4 *M. & S.,* 58; *Doe vs. Wright,* 8 *Tenn.,* 64; *Hopewell vs. Ackland,* 1 *Salk.,* 239; 14*th Rule of Powell,* 2 *Wm's Ex.,* 972. And the ordinary sense of the words must be taken. 1 *Vesey,* 447, *note* 2, (*Sumner's Ed.*); 2 *Roper on Legacies,* 322, *Rules* 7 *and* 8; 2 *Wm's Ex.,* 972–979, 1085; *Powell's Rules,* 10, 13, 14, 16; 1 *Redfield on Wills,* 326, 430, 473, *note* 4, *Jarman's Rule* 12.

Neither the words nor their position are to be changed if the meaning is clear; and even in cases of doubt the *exact* words are to be adhered to, and are not to be departed from to conform to any supposed preference or intent of the testator, or be controlled by any parol testimony in the case. *Doe vs. Sloggett,* 5 *'Exch.,* 107; *Doe, ex dem. Crutchfield vs. Pearce,* 1 *Price,* 353; 1 *Red. on Wills,* 434-5-6, *Plac.* 21 *and notes.*

Transposition is admissible only to clear up a doubt, not to create it. 1 *Red. on Wills,* 430-2, *Plac.* 15 *and note* 15; 1 *Red. on Wills,* 435-6, *note* 30, *and cases cited; Hoxie vs. Hoxie,* 7 *Paige,* 187, 192; *Maingault vs. Deas,* 1 *Bailey, Eq.,* 208.

Punctuation may not be regarded when rejection of existing punctuation will bring out and render clear the meaning of the instrument. It will not be disregarded to raise an ambiguity. 1 *Red. on Wills,* 433-4, *Plac.* 5 *and note* 22.

General intent. *Rule* 2, 1 *Red. on Wills,* 433-4, *and cases cited in note* 18.

It is the Court's "duty to give effect to all the words without *rejecting* or *controlling* any of them, if it can be done by a reasonable construction, not inconsistent with the manifest intention of the testator." This rule is stated with this commendation by Redfield, "there is, perhaps, no general form of stating this cardinal rule of construction, which is less exceptionable." 1 *Red. on Wills,* 434-5, *Plac.* 19, *note* 28.

The above propositions and authorities fully sustain the position we have taken, that before the particular intent can be controlled by a general intention, if such existed in the will, it must appear to be in conflict with it. In this case it is not "impracticable" to carry out the bequests of this will, as claimed by the appellants, and it is the duty of the Court to construe the will, that *each* and *every intention* may be gratified. In arriving at the particular intention of the clause, the Court may recur to several keys—

1st. If the paper in its construction gives evidence that it is written by a skilled scribe, that may be considered in giving the construction. 1 *Red. on Wills*, 435–6, *Plac.* 33.

2d. The general mode of framing the devises in the particular will by such skilled draughtsman, may be looked at.

In this case it appears that the will was drawn by a lawyer, familiar with legal language, and a scholar familiar with the structure of the language in which the paper is written. Full effect must be given then, to these facts—he must be presumed to have intentionally used the particular language, and so punctuated it, as to give the effect under grammatical rules of what he meant to say.

[Counsel here contended from an examination of the will, that the construction claimed to be correct by the appellants would effectuate the special intention of the clause. Rep.]

An estate devised by plain, positive and unambiguous language, cannot be divested except by language as positive and plain. And, if the language supposed to divest it will apply to some other estate, to which, by its position in the structure of the devise, it would seem naturally and grammatically to apply without doing any violence to the rules of construction of wills, it must be so held to apply.

The interest first given will not be taken away by *tacitum* or *dubium, possibile or probabile,* it must be *per certum et expressum.* Hence, the estate given to Rhoda by the first clause, cannot be divested by speculations or remodeling the clause to suit the views of the appellees. *Cole vs. Wade,* 16 *Ves.,* 45 ; *Thornhill vs. Hall,* 2 *Clark & Fin.,* 36 ; *Thornhill vs. Hall,* 8 *Bligh, N. S.,* 88 ; *Collett vs. Lawrence,* 1 *Ves. Jr.,* 269 ; *Jones vs. Colbeck,* 8 *Ves.,* 40 ; *Harwood vs. Goodright, Cowper,* 90 ; *Arcularius vs. Geisenhainer,* 3 *Brad.,* 65.

And the Court cannot go into another part of the will to explain that which is certain in itself. Where the expressions are varied in two devises, the more natural conclusion is, that the form of expression was altered because the intention was not the same in both cases. *Doe vs. Westly,* 4 *Barn. & Cress.,* 667 ; *Compton vs. Compton,* 9 *East,* 272 ; *Spurt vs. Bence, Cro. Car.,* 368 ; *Cownden vs. Clerke, Hobart,* 33 ; *Doe, ex dem. Child vs. Wright,* 8 *Tenn.,* 64 ; *Goodright vs. Barron,* 11 *East,* 219 ; *Pue vs. Pue,* 1 *Md. Ch.,* 382 ; *Doe. vs. Sloggett,* 5 *Ex.,* 107 ; *Bettison vs. Richards,* 7 *Taunt.,* 105.

The plain question is, whether this will is to be read and construed as it reads, or be altered, then read and construed. The appellees are attempting to use a limitation provided by the testator for a case which has never and can never arise. It is not the will of the testator, but the will of the appellees this Court is asked by them to enforce. The contingency he contemplated not having arisen, they seek to stretch its provisions to a case to which he did not apply it.

*I. Nevett Steele,* for the appellees.

The construction contended for by the appellants would give to the semicolon in the seventh clause, a force and effect unknown to the rules of construction established by the common law. Where ambiguity exists, punctua-

tion may be regarded when no other means of solving the ambiguity can be found, but if itself the source of the ambiguity, it is unimportant, and will not be suffered to confuse a construction otherwise clear. *Sanford vs. Raikes*, 1 *Merivale*, 65 ; *Arcularius vs. Geisenhainer*, 3 *Brad.*, 64, 76 ; *Arcularius vs. Trout*, 25 *Barbour*, 406 ; *Wigram & O'Hara on Con. of Wills*, 29 ; 1 *Red. on Wills*, 434 ; *Mims vs. Armstrong*, 31 *Md.*, 98.

Even when the fullest force and effect to which a semi-colon can be entitled, is given to it in this case, the construction contended for by the plaintiff, cannot be maintained. A semicolon is in punctuation next to a comma— it is always found *in* a sentence, and not at the end of it ; and it does not destroy the dependence of one part of a sentence upon the other part. Where a will is divided into items, as in this case, *the whole* of each item *prima facie* constitutes the connected and complete disposition of property to which the item relates. To separate it into *independent* parts, and treat them as if they were separate clauses, is to do violence to the apparent intention of the will which connects them together as one disposition in one clause. To make such separation, when the item is *one sentence*, would be to make a will for the testator instead of construing his will as made.

The rules of construction not only require that the *whole* of each item should be connectedly considered in ascertaining its meaning ; but they go further, and require that the whole will should be looked at and considered in settling the meaning of its different provisions; and the general intention thus ascertained, will, as far as possible, be carried into effect. In this case, the intention of the testator, which is after all, the true guide of the Courts in construction, is manifest throughout all the parts of the will, in which bequests are made to Mrs. Weatherly, that she should have a life estate only for her separate use, with remainder to her children if she should

have any, and to his other children if she should die childless. The residuary clause was intended, in the part relating especially to her, to carry out this intention.

This construction of the will, founded upon its language, and this apparent general intention running through it, though sufficiently clear and strong of themselves, are strengthened by the evidence in the cause as to the circumstances which surrounded the testator. The age of Mrs. Weatherly rendered it altogether improbable that she would have children ; her husband had failed in business in Baltimore ; had unpaid debts hanging over him, and had gone to reside in Mississippi. If personal property was given to her absolutely, it would in the event of her dying intestate and without children, pass from the testator's family, and belong absolutely to Dr. Weatherly ; and even during her life if she went to reside in any State where the old common law rules existed, and the wife's property was not protected by statute, it would become absolutely her husband's and be liable for his debts ; and in this State, she could by having her husband to unite in the conveyance, dispose of it if she chose, for his benefit, and thus deprive herself of the means of support, which her father's bounty might afford her. The intention of the testator was naturally that his property should go to those of his own blood and not to a stranger, and that it should go to his daughter in such form as would make it *secure* to her as long as she should live. The evidence offered was clearly admissible. *Taylor vs. Watson*, 35 *Md.*, 519, 524; *Earp's Will*, 1 *Parson's Cases*, 453 ; 1 *Red. on Wills*, 496–7.

The construction of the residuary clause, as claimed by Mrs. Weatherly, would make it what the cases term "insensible," and therefore will not be adopted unless the intention of the testator is so unequivocally expressed as to leave room for no reasonable construction. It would

give her an absolute estate if she took one-third, and only an estate for life if she took one-half.    This is insensible, and no reason can be assigned for it, or guessed at. Her brother and sister were the legatees in remainder of her part, and according to the construction contended for on the other side, if one of them should die before the testator, so that the other and Mrs. Weatherly should each get half the residue, that other would, upon Mrs. Weatherly's death, get her half also, while if both of them survived the testator, so that they with Mrs. Weatherly, would each get only a third, and would therefore more need her share at her death, they would get no portion of her share whatever.

If the testator had meant or intended that Mrs. Weatherly's husband should, in any event, have the benefit of the residuary bequest to her, (and that is the substantial question involved) he would have made some provision for the husband in the event of her dying before the testator himself.    No such provision is made, but on the contrary throughout the will, care is sedulously taken, that her estate shall be for her sole and separate use.

ROBINSON, J., delivered the opinion of the Court.

This cause comes up on appeal from the decree of the Circuit Court of Baltimore City, on a bill filed by the appellants against the appellees, to obtain the true construction of the seventh clause in the will of George Mister, late of said city, which reads as follows:

"*Seventh.*—All the rest and residue of my estate, real, personal or mixed, I give and devise to my three children, Rhoda A. Weatherly, Beverly Waugh Mister and Mary A. Mister, to be equally divided between them ; but if either of my said children should die prior to my decease, leaving no child or children living at the time of his or her death, in that event my surviving child or children shall be entitled to the said rest and residue of my estate,

and the part which may fall to my daughter Rhoda A. Weatherly, shall be held by her as her sole and separate estate, and subject to the limitations as to her husband, and as to its further disposition contained in the third item of this will."

The third item in the will thus referred to reads as follows:

"*Third.*—I give and bequeath to my daughter Rhoda A. Weatherly, six thousand dollars in five-twenty bonds of the United States, to be her sole and separate property, free from the control of or liability for her present husband or any future husband she may have; and at her death the said bonds and their proceeds shall vest in any child or children she may have; and in case she shall die without issue surviving her at the time of her death, the said bonds and their proceeds shall vest in my children surviving her equally."

The three children named as devisees and legatees in the seventh clause of the will survived the testator, and the sole question presented by this appeal is whether Mrs. Weatherly takes under such clause in the one-third residue thus devised to her, an *absolute estate* instead of an *estate for life with remainder over, and an unqualified estate* instead of *an estate for her sole and separate use.*

Independent of the use of the semicolon after the word "*them,*" no doubt could arise we think as to the proper construction of this clause in the will. Looking to the language of the clause in question, it presents the simple case of a gift of the residue to three children if they survived the testator, to two of them if two survived, and to one, if only one survived him, with the additional provision that the part which might fall to Mrs. Weatherly should be "held by her as her sole and separate property," with limitation over to her children in the event of her death, &c.

The appellants, however, contend that this clause is to be construed as containing two distinct and independent devises, separated by the use of the semicolon after the word "them;" and that in the event of the three children surviving the testator, Mrs. Weatherly was to take an *absolute, unqualified,* and *unrestricted estate* in the one-third residue; and that the limitation over, and restriction of the estate to her free and separate use by the latter part of the clause was only to take effect, upon the death of her brother or sister in the life-time of the testator. In other words, that the semicolon is to be construed as a period or full stop, thus separating entirely the two sentences in the clause from each other. We agree with the counsel for the appellees that this construction would give to this semicolon, a force and effect unknown to the rules of construction, established by the common law. Punctuation may perhaps be resorted to when no other means can be found of solving an ambiguity, but not in cases where no real ambiguity exists, except what the punctuation itself creates. In such cases it will not be allowed to confuse a construction otherwise clear. *Sanford vs. Raikes,* 1 *Merivale Rep.,* 650; *Arcularius vs. Geisenhainer,* 3 *Brad. Rep.,* 64; *Arcularius vs. Trout,* 25 *Barb.,* 406; *O'Hara on Const. of Wills,* 29; 1 *Red. on Wills,* 434.

But in this case, even if we should give to the semicolon its fullest force and effect, we are not prepared to say that the construction contended for by the appellants could be maintained. We may not be able to define precisely what is the effect of a semicolon upon the separate members of a compound sentence, but it is generally used for dividing a compound sentence into two or more parts, not so closely connected as those which are separated by a comma, nor yet so little dependent on each other as those which require the colon. But the use of it does not necessarily destroy the dependence of the several

members of a compound sentence upon each other. To give this effect to the semicolon as used in the seventh clause of the will, and to say that by force of it Mrs. Weatherly takes under the first part of the sentence which precedes it, an *absolute* and *unqualified estate,* and that under the second part of the sentence which follows it, she takes an *estate for life* for *her sole and separate use,* would be to make the construction depend upon a semicolon, and not upon the plain language of the will itself.

We are of opinion, therefore, that under the seventh clause, Mrs. Weatherly takes a life estate in the one-third part of the residue of the testator's estate, to her *sole and separate use, with limitation* over to her children, should she die leaving any.

This construction is certainly consistent with the general intention of the testator apparent upon the face of the will. Not only in the third, but in the fourth, fifth, and in fact in every clause in which there is a bequest to Mrs. Weatherly, there is a limitation to her *sole* and *separate use,* remainder to her children.

On the other hand, if the construction contended for by the appellants be correct, Mrs. Weatherly takes an absolute and unqualified estate in one-third part of the residue, whereas if either her brother or sister had died before the testator, she would have taken one-half for life, with limitation over to her children. No reason can be assigned in support of such a construction, and it is inconsistent with the general and special intent which pervades the will.

Entertaining these views, it becomes unnecessary to decide whether the parol evidence offered by the appellees was admissible.

*Decree affirmed.*

(Decided 3d March, 1874.)