AUGUSTUS P. MARTIN *vs.* LUTHER E. GLEASON.

Middlesex. Jan. 29. — March 25, 1885. DEVENS, W. ALLEN, & COLBURN, JJ., absent.

Punctuation may be disregarded in construing a statute.

The St. of 1846, c. 167, § 1, authorized the city of Boston to take the water of Long Pond, " and the waters which may flow into and from the same, and any other ponds and streams within the distance of four miles from said Long Pond, and any water-rights connected therewith ; " and also to " take and hold any land on and around the margin of said Long Pond, not exceeding five rods in width, . . . . and on and around the said other ponds and streams, so far as may be necessary for the preservation and purity of the same, for the purpose of furnishing a supply of pure water for the said city of Boston." *Held,* that water-rights might be taken, so far as might be necessary for the preservation and purity of the water ; and that the words " and any water-rights connected therewith " were not limited to the " other ponds and streams," but included Long Pond itself, and the waters which might flow into and from the same. *Held, also,* that, under this statute, the city might take a prescriptive right to

pollute the waters of a stream running into Long Pond; and that it was not necessary for this purpose to take the land on the sides of the stream.

Under the St. of 1846, c. 167, § 1, the city of Boston filed a taking of all the waters of Long Pond, " and other brooks and streams, whether permanent or temporary, entering into the same, . . . . and all the water-rights thereunto belonging, or in any wise appertaining, for the sole use and benefit of said city." *Held*, that this included the waters of any stream running into Long Pond, and any right then existing to pollute the waters of such stream.

After the taking of the waters of a stream for the purpose of supplying a city with pure water, a prescriptive right to pollute the stream cannot be acquired.

If a pond and the waters of a stream running into the pond are taken for the purpose of supplying a city with pure water, it is no defence to a petition in equity, under the St. of 1884, c. 154, for an injunction to restrain a person from polluting the stream, that the city has, by means of a dike, prevented the waters of the stream from running into and polluting the waters of the pond.

PETITION IN EQUITY, under the St. of 1884, c. 154,* filed September 4, 1884, by the mayor of the city of Boston, for an injunction to restrain the defendant from discharging human excrement and sewage into Pegan Brook in the town of Natick.

The petition set forth the authority granted to the city by the St. of 1846, c. 167,† to take the waters of Long Pond, and all the waters which may flow into and from the same; and the taking by the city, on August 10, 1846, of all the waters of Long Pond, and also, among other waters which may flow into the same, those of that brook in Natick known as Pegan Brook;

---

* Section 1 of this act, which took effect upon its passage, April 16, 1884, is as follows: " The Supreme Judicial or Superior Court, in term time or vacation, upon the application of the mayor of a city or the selectmen of a town interested, may grant an injunction against any violation of the provisions of section ninety-six of chapter eighty of the Public Statutes."

Section 96 of the Pub. Sts. c. 80, is as follows: " No sewage, drainage, or refuse or polluting matter, of such kind and amount as either by itself or in connection with other matter will corrupt or impair the quality of the water of any pond or stream hereinafter referred to, for domestic use, or render it injurious to health, and no human excrement, shall be discharged into any pond used as a source of water-supply by a city or town, or upon whose banks any filter basin so used is situated, or into any stream so used, or upon whose banks such filter basin is situated, within twenty miles above the point where such supply is taken, or into any feeders of such pond or stream within such twenty miles."

† Section 1 of this act is as follows: " The city of Boston is hereby authorized, by and through the agency of three commissioners, to be appointed in the manner hereinafter provided, to take, hold and convey to, into, and through the said city, the water of Long Pond, so called, in the

that the city had ever since used said lake and brook as a source of water supply for its inhabitants; that the whole course of said brook and all its waters are within the distance of four miles from said lake, and within twenty miles from the point where such supply is taken; that the defendant for several years last past had been, and now is, the occupant of a building kept by him as a hotel, on the northerly side of Summer Street, in Natick; that in his use and control of said hotel he for a long time had discharged, and still continues to discharge, human excrement into said brook, and had also discharged sewage, refuse, and polluting matter thereinto, of such kind and amount as either by itself or in connection with other matter to impair the quality of the water of said brook for domestic use.

The answer denied that Pegan Brook emptied into Long Pond, or that its waters were used as a water supply for Boston; alleged that the plaintiff had constructed a dike and dam so as to shut off the waters of Pegan Brook from flowing into Long Pond; that the defendant's grantors, for more than twenty years before 1846, and 1878, had used the land now owned by the plaintiff for domestic purposes, discharging sewage, drainage, refuse, and polluting matter, including human excrement, thereon, and into drains thereon emptying into Pegan Brook,

---

towns of Natick, Wayland and Framingham, and the waters which may flow into and from the same, and any other ponds and streams within the distance of four miles from said Long Pond, and any water-rights connected therewith; and may also take and hold, by purchase or otherwise, any lands or real estate necessary for laying and maintaining aqueducts for conducting, discharging, disposing of, and distributing water, and for forming reservoirs; and may also take and hold any land on and around the margin of said Long Pond, not exceeding five rods in width, measuring from the verge of said pond, when the same shall be raised to the level of eight feet above the floor of the flume at the outlet thereof, and on and around the said other ponds and streams, so far as may be necessary for the preservation and purity of the same, for the purpose of furnishing a supply of pure water for the said city of Boston. The city of Boston shall, within sixty days from the time they shall take any lands or ponds or streams of water for the purposes of this act, file, in the office of the registry of deeds, for the county where they are situate, a description of the lands, ponds, or streams of water so taken, as certain as is required in a common conveyance of lands, and a statement of the purpose for which taken, which said description and statement shall be signed by the said mayor."

which prescriptive right was appurtenant to the plaintiff's land; and that this right was a "water-right" within the meaning of the St. of 1846, and was not taken by the city under said statute.

The defendant also filed a motion that issues be framed for a jury.

Hearing before *Colburn*, J., who found the following facts:

Pegan Brook is and always has been a feeder of Long Pond, now Lake Cochituate. The defendant is the proprietor of a hotel in the town of Natick, on the banks of said brook, in which he accommodates from thirty to forty boarders. All the human excrement discharged from the water-closets of the hotel, and all the sewage of the hotel, are discharged directly into said brook. The quantity of human excrement and sewage so discharged is sufficient to contaminate the water of the brook.

On August 19, 1846, the city filed in the registry of deeds for the county of Middlesex an instrument in writing, a copy of which was annexed to the report. This paper, dated August 10, 1846, and signed by the mayor of Boston and the water commissioners, after reciting the first section of the St. of 1846, proceeded as follows:

"Now, therefore, know all men by these presents, that the city of Boston, by their commissioners, Nathan Hale, James F. Baldwin, and Thomas B. Curtis, duly appointed for this purpose, and by virtue of the power and authority in said act given, and in part execution of the same, have taken, and by these presents do take, all the waters of said Long Pond, so called, and other brooks and streams, whether permanent or temporary, entering into the same, and of all the bays, coves, and inlets thereof, and of the outlet of the same, and all the water-rights thereunto belonging, or in any wise appertaining, for the sole use and benefit of said city, and also, for the use aforesaid, the water of Dug Pond, so called, and of the stream or streams entering into the same, and also of the stream extending from said Dug Pond to said Long Pond; all which waters and water-rights are situated in the towns of Natick, Wayland, and Framingham, in the county of Middlesex and Commonwealth of Massachusetts, and covering an area, exclusive of the streams flowing into the said ponds, of about seven hundred acres, be the same more or less. To hold the said water and water-rights

to the said city of Boston, its successors and assigns, to its and their sole use and behoof forever, agreeably to the provisions of said act."

All of Pegan Brook is within four miles of said Long Pond, and within twenty miles of the point on said pond where said supply is taken. As soon as the necessary works could be constructed, the city proceeded to take a water supply from said pond.

The defendant offered to show that, by reason of constructions erected by the plaintiff city at the mouth of said brook, since the taking in 1846, the waters of Pegan Brook do not in fact contaminate the water of Long Pond. The judge refused to admit the evidence.

The judge ruled, as matter of law, that, by the instrument filed in the registry of deeds, the city of Boston took the waters of Pegan Brook as a source of water supply; and reserved for the consideration of the full court the questions of the correctness of this ruling, and of the refusal to admit the evidence to show that, since the taking, the waters of Pegan Brook do not contaminate the water of Long Pond; and whether it was open to the defendant to show a prescriptive right to discharge human excrement and sewage into the brook; and whether, if that question was open to him, he had a right to have an issue framed for a jury.

*E. P. Nettleton,* (*A. J. Bailey* with him,) for the petitioner.

*J. G. Abbott,* (*E. F. Dewing* with him,) for the respondent.

C. ALLEN, J. Disregarding punctuation, as may properly be done in construing a statute, (*Cushing* v. *Worrick,* 9 Gray, 382, 385,) and looking at the purpose and contemplated scope of the St. of 1846, *c.* 167, the city of Boston was authorized, by § 1 of that statute, to take the water of Long Pond and the waters which may flow into and from the same and any other ponds and streams within the distance of four miles from said Long Pond, and any water-rights connected therewith so far as may be necessary for the preservation and purity of the same for the purpose of furnishing a supply of pure water for the said city of Boston. This declared purpose relates back and illustrates the extent of the authority conferred. Water-rights may be taken, so far as may be necessary for the preservation and

purity of the water. The words "and any water-rights con-nected therewith" are not limited to the immediate antecedent, namely, the "other ponds and streams" there referred to, but they also include Long Pond itself, and the waters which may flow into and from the same. It was designed to give a broad and comprehensive authority, for the purpose of furnishing a supply of pure water for the city; and to confer the power to take everything included within the meaning of the antecedent words, so far as might be necessary for the preservation and purity of the water. Section 15, imposing a penalty for wan-tonly or maliciously diverting the water, or any part thereof, of any of the ponds, streams, or water-sources which shall be taken by the city, or corrupting the same, or rendering it im-pure, confirms this view. Under this authority, the city might lawfully take any water-rights connected with the waters flow-ing into Long Pond, including the prescriptive right which the defendant contends that he then had to discharge sewage into Pegan Brook. It appears that this brook is and always has been a feeder of Long Pond; and that the whole of it is within four miles of the pond. A prescriptive right to foul the waters of a stream is included under the term "water-rights." This indeed is asserted by the respondent in his answer. It is a right in respect to the water of the stream; and the statute conferred power to take all water-rights which might interfere with the purity of the waters taken.

It is contended for the respondent, that, if it was necessary to preserve the brook or the purity of the water, power was granted to the city to take the land on each side of the brook, and thus cut off any use either of it or of its waters; and indeed that the water-rights could not be taken separately from the land. But it does not appear to us to be necessary, even if it was competent, for the city to take the land on the sides of the brook, in order to extinguish any prescriptive right to foul the water of it.

Assuming that the respondent had such prescriptive right, it is further contended that the city did not take it; but that the taking of the waters of the brooks and streams entering into Long Pond only appropriated the water as it flowed into the pond at the time of the taking, and subject to all legal burdens

and uses then existing. This, however, is too narrow a construction of the description of what was taken. The city, after reciting the whole of the first section of the statute, took all the waters of Long Pond, " and other brooks and streams, whether permanent or temporary, entering into the same, . . . . and all the water-rights thereunto belonging or in any wise appertaining, for the sole use and benefit of said city." This language does not exactly ·follow the language of the statute; but we cannot doubt that it is broad enough to include Pegan Brook, and the taking of " all the water-rights thereunto belonging or in any wise appertaining " includes any right then existing to foul its waters. It is urged, by way of illustration, that, if a mill existed on the brook, the right to use the mill was not taken. But it is not necessary to consider that question here. It does not appear that there was any mill on the brook. If there was, the use of the water for turning its wheels might not foul the water, and might therefore be consistent with the purpose and rights of the city. But the right to use the brook as a discharge for sewage in large quantities, as practised by the respondent, is inconsistent with such purpose. If, therefore, the respondent had any such prescriptive right to foul the water of Pegan Brook, as he claimed, such right was taken and extinguished by the act of the city under the St. of 1846; and by § 6 of that act the city was liable to pay all damages sustained thereby. The respondent, if he sustained damage, might have applied, by petition, for the assessment thereof at any time within three years from such taking. This remedy was the exclusive one.

It was not seriously contended in the argument, that the respondent had acquired a prescriptive right to foul the waters since the taking by the city in 1846. Such prescriptive right could not be acquired, because the fouling of the water since the right to foul it ceased would be a public nuisance. *Morton* v. *Moore*, 15 Gray, 573, 576. *Brookline* v. *Mackintosh*, 133 Mass. 215, 225.

Finally, it was contended for the respondent that, by reason of constructions erected by the city at the mouth of the brook, since the taking in 1846, the waters of Pegan Brook do not in fact contaminate the water of the pond; and that therefore the

city is not injured. It appears, however, as a fact, that the water of the brook is contaminated by the acts of the respondent. The city has a right to be protected against the necessity of maintaining works for the preservation of the purity of the water from such a cause. If the acts of the respondent in fouling the stream have made it necessary for the city to resort to extraordinary means for preserving the purity of the water of the pond, he cannot justify the continuance of such illegal fouling by showing that the city has thus far been able, by the maintenance of special works, to prevent the natural result of his acts.

The result is that the petition for an injunction is maintained.

*Injunction to issue.*