JOSEPH B. DUNN, JAMES P. DUNN, NORBERT B. DUNN, CARROLL J. DUNN AND CHARLES C. SCHEIDT, Co-Partners, Trading as Joseph B. Dunn & Sons, *vs.* ALBERT A. BRAGER, AND CHARLES LEE MERRIKEN, Trustee in Bankruptcy of Engineering and Contracting Company.

*Mechanics' Lien; Baltimore City. Statutes; construction; punctuation. Indivisible contracts.*

Punctuation is not an essential part of an act as passed by the legislature. p. 250

If punctuation can be simplified or altered so as to render the language of the act intelligible and to bring it into accord with the obvious purpose of the legislature, it is the duty of the Court to simplify the defect or make the change. p. 250

Chapter 52 of the Acts of 1910, reading "every building erected and every building repaired, rebuilt or improved to the extent of one-fourth of its value in Baltimore City and in any of the counties shall be subject to a lien for the payment of all debts contracted for work done for, or about the same and in the counties. Every such building shall also be subject to a lien for the payment of all debts contracted for materials furnished for or about the same";— is to be construed to read "every building, etc., * * * shall be subject to a lien for work done for or about the same. And in the counties every such building shall be liable for the payment * * * for materials furnished for or about the same." p. 250

Under this act in Baltimore City, the mechanics' lien laws apply only for work done, and do not apply to contracts for materials.                                                    p. 251

Where a building contract includes furnishing materials as well as labor and is an indivisible contract, there is in Baltimore City no lien for the payment of the labor furnished any more than for the materials supplied.       pp. 251, 252

*Decided June 23rd, 1911.*

Appealed from the Circuit Court of Baltimore City (HEUISLER, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, URNER and STOCKBRIDGE, JJ.

*Randolph Barton, Jr.*, and *Randolph Barton* (with whom was *James J. McGrath* on the brief), for the appellants.

*Louis N. Frank* and *Carville D. Benson* (with whom was *Myer Rosenbush* on the brief), for the appellee, Charles Lee Merriken.

*Louis N. Frank* filed a brief for the appellee, Albert A. Brager.

PEARCE, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellants, for the enforcement of a mechanics' lien claim for work done and material furnished and used in the construction of a building belonging to Albert A. Brager, originally the sole defendant, and situated in the City of Baltimore. This work was done and materials furnished under a contract between the appellants and the Engineering and Contracting Company, a body corporate engaged in the erection of said building for the said Brager under their contract with him, and all the formal requirements of law preliminary to the enforcement of a valid claim were complied

with.    The said Brager, however, demurred to the whole
bill, assigning three grounds of demurrer:

(1) Because the plaintiffs have not stated in their bill
such a case as entitles them to any relief in equity against
him.

(2) Because the Court is without jurisdiction to grant the
relief prayed.

(3) Because there is no valid law of the State of Mary-
land which entitles the plaintiffs to the right to a mechanics'
lien as stated in their bill.

Thereafter, the Engineering and Contracting Company
having been adjudicated a bankrupt, Charles Lee Merrikin,
its trustee in bankruptcy, was on his petition made a party
defendant, and he filed the following demurrer and answer:

"Answering said Bill of Complaint, this respondent says:

"1. That this respondent admits the allegations contained in
paragraphs one, two, three, four and five of said bill, but denies
that the Act of Assembly of the State of Maryland of the year
1910, Chapter 52, is a valid and legal statute of the State of
Maryland, giving a mechanics' lien for materials, in the City of
Baltimore, because section 30 of the Constitution of the State
of Maryland provides as follows:

" 'Every bill, when passed by the General Assembly and
sealed with the Great Seal, shall be presented to the Governor,
who, if he approves it, shall sign the same in the presence of
the presiding officers and chief clerks of the Senate and House
of Delegates.'

"And because said alleged Act of Assembly, known as Chap-
ter 52 of the Acts of 1910, when passed by the General Assem-
bly and sealed with the Great Seal, read, in part, as follows:

" 'Every building erected and every building repaired, rebuilt
or improved to the extent of one-fourth its value in Baltimore
City and in any of the counties shall be subject to a lien for
the payment of all debts contracted for work done for or about
the same, and in the counties every such building shall also be
subject to a lien for the payment of all debts contracted for
materials furnished for or about the same.'

"As will more fully appear by the original act as passed by the yea and nay vote of the Senate and House of Delegates of the State of Maryland, which is herewith filed marked 'Respondent C. L. M. Exhibit A,' and which it is prayed may be taken as part hereof, and as will more fully appear by said original bill, as engrossed and referred to the Attorney-General, and by the advice of said Attorney-General, and at the request of the General Assembly of Maryland, returned to said General Assembly for amendments, and, as amended, passed by said General Assembly by the yea and nay vote of each house thereof, and sealed with the Great Seal of the State of Maryland, as will more fully appear by said last-mentioned bill, which is herewith filed marked 'Respondent C. L. M. Exhibit B,' and which is prayed may be taken as part hereof.

"And said alleged Act of Assembly, when passed and sealed as aforesaid, was enrolled, and during said enrollment, through error or inadvertence, was made to read, by the improper, inadvertent and unauthorized insertion of a period, contrary to the acts and intent of the General Assembly of Maryland, as follows:

" 'Every building erected and every building repaired, rebuilt or improved to the extent of one-fourth its value in Baltimore City and in any of the counties shall be subject to a lien for the payment of all debts contracted for work done for or about the same, and in the counties. Every such building shall also be subject to a lien for the payment of all debts contracted for materials furnished for or about the same.'

"And as enrolled as last above set forth was signed by the Governor of the State of Maryland, and by reason thereof said Act of Assembly, signed as aforesaid, is not a valid law of the State of Maryland.

"And because said alleged act, as signed by the Governor of Maryland 'was not passed in each house by a majority of the whole number of members elected,' in accordance with the requirements of section 28 of the Constitution of the State of Maryland.

"Wherefore, having as fully answered said bill as this respondent is advised is necessary and proper, this respondent prays to be hence dismissed with costs.

"And as in duty bound, etc.,

"CARVILLE D. BENSON,
*Sol. for Respondent.*

"CHAS. LEE MERRIKEN,
*Respondent.*

"(Affidavit attached.)"

An agreed statement of facts was filed admitting that "C. L. M. Exhibit A," referred to in the answer, is the original bill mentioned therein as passed by the General Assembly of Maryland, and that "C. L. M. Exhibit B," referred to in the answer, is the enrolled copy of said bill so passed, and presented to the Governor of the State for his signature, and that these exhibits should be used in the Circuit Court and in this Court, for the purpose of reviewing the writing and punctuation, and for any purpose for which they would be admissible if regularly offered and proved, but the plaintiffs reserved the right to object to their admissibility as evidence for any purpose. The testimony of Carville D. Benson, a member of the House of Delegates of Maryland at the January Session of 1910, when the bill referred to was passed, and who was thoroughly familiar with the method and routine of enacting laws, and with the history of the passage of that particular bill, was also taken, and he explained at length every step in its passage, in support of the averments of the answer relating thereto.

The plaintiffs objected to the introduction of Exhibits "C. L. M. A." and "C. L. M. B." and to all the evidence of Carville D. Benson, and these objections being overruled, they excepted to these rulings, and the Court sustained the demurrers and dismissed the bill and this appeal is from that decree. The record thus raises the question both of the validity and interpretation of Chapter 52 of the Acts of 1910, relating to mechanics' liens. The appellants contend that the act is valid, and that by its provisions a lien is given in Baltimore City as well as in the counties of the State, for the payment of debts both for labor and material. The appellee contends that under the true interpretation of the

act, the lien for material debts is confined to the counties, and does not exist in Baltimore City, and also suggests, rather than contends, that the act is signed and printed in the published volume of laws of 1910 differs from the act as it actually passed the General Assembly, and is therefore not a valid act at all. The Circuit Court held the act to be valid and sustained the interpretation placed upon it by the appellee.

The most satisfactory way to determine what was the situation after the passage of Chapter 52 of 1910, is to ascertain what was the situation immediately preceding its passage. At that time section 1 of Article 63 of the Code of Public General Laws, title "Mechanics," was as follows:

"Every building erected and every building repaired, rebuilt or improved to the extent of one-fourth its value in Baltimore City and in any of the counties shall be subject to a lien for the payment of all debts contracted for work done for or about the same; and in the counties, except Baltimore county, every such building shall also be subject to a lien for the payment of all debts contracted for materials furnished for or about the same. In Baltimore county nothing in this article except as provided in section 20, shall entitle any person, firm or corporation to the benefit of such lien upon any such building for materials furnished for or about the same, unless the contract for furnishing such material shall have been made directly with the owner of such building or his agent. This section shall not affect or impair liens existing in Baltimore county on April 11th, 1902, under pre-existing law."

It is clear, beyond question, that under that section, the existing situation up to that point of time was that in Baltimore City there was no lien *except for work done;* that in Baltimore county there was a lien for work done, but none for materials furnished, *except when the contract therefor was directly with the owner of the building or his agent;*

and that in all the other counties of the State there was a lien *both* for work done and materials furnished in all cases.

Section 281 of Chapter 495 of 1908 repealed and re-enacted the whole Code of Public Local Laws, title "Baltimore County," and section 281 of that article, which was the only one relating to mechanics' liens, was as follows: "Every building erected, and every building repaired, rebuilt or improved in Baltimore county to the extent of one-fourth its value, shall be subject to a lien for the payment of all debts contracted for work done or materials furnished for or about the same; provided that nothing in Art. 63 of the Code of Pub. Gen. Laws, title 'Mechanics' Lien,' except as provided in sec. 20 thereof, shall entitle any person, firm or corporation, to the benefit of such lien upon any such building in Baltimore county for materials furnished for or about the same, unless the contract for furnishing such material shall have been made directly with the owner of such building or his agent." The situation of Baltimore county was, therefore, the same—whether regard be had to the Public General or to the Public Local Law. In the meantime there was no change in the legislation upon that subject relating to Baltimore City, the lien being consistently confined *there* to debts for work done.

Then followed Chapter 52 of the Acts of 1910, now in question, the title and text of which is as follows:

"An Act to repeal sec. 281 of Art. 3 of the Code of Public Local Laws of Maryland title 'Baltimore County' as said section was enacted by Chapter 495 of the Acts of 1908 of the General Assembly of Maryland, and also to repeal and re-enact with amendments section 1 of Article 63 of the Code of Public General Laws, title 'Mechanics' Lien,' as amended by the Acts of 1902, Chapter 432."

Section 1. Be it enacted by the General Assembly of Maryland that section 281 of Article 3 of the Public Local Laws of Maryland, title 'Baltimore County,' as said section was enacted by Chapter 495 of the Acts of 1908 of the General Assembly of Maryland, be and the same is hereby repealed, and that section

1 of Article 63 of the Code of Public General Laws of Maryland, title 'Mechanics' Lien' as amended by the Acts of 1902 Chapter 432, be and the same is hereby repealed and re-enacted with amendments so as to read as follows:

1. Every building erected and every building repaired, rebuilt or improved to the extent of one fourth its value in Baltimore City and in any of the counties shall be subject to a lien for the payment of all debts contracted for, work done for, or about the same and in the counties. Every such building shall also be subject to a lien for the payment of all debts contracted for, materials furnished for or about the same.

Sec. 2. And be it further enacted, That this Act shall take effect from the date of its passage."

The punctuation and capital letters in the above transcript are precisely as they appear in the printed volume.

In C. M. L. Exhibit A, there is not a single punctuation mark of any description, except the period at the end of the section and the great seal was never impressed thereon, nor was it signed by the Governor and the presiding officers of the Senate and House of Delegates. C. M. L. Exhibit B, is the enrolled copy of this bill upon which the great seal was impressed, and which was presented to the Governor for his signature. Before it was signed, however, it was returned to the Senate in response to a message from that body, and after making certain amendments to the title and body of the act, which in no way effect the question in this case, it was passed by both houses as amended.

There is not a single punctuation mark in this exhibit, of any description, except the period at the end of section 1, but capital letters are used in several places, as in the word "Counties" whenever it occurs; in the word "Every," between the words "Counties" and "such;" in the word "Contracted" as last used in that section, and in the word "Materials" as last used therein, thus indicating a total absence of discrimination and significance in the use of capital letters.

We have examined and compared the printed act with the original second enrolled copy signed by the Governor and on

file in, the office of the Clerk of this Court, and it agrees in every respect with the printed act, except that there is no comma after the word "repaired" in the first line. In all other respects there is the same faulty and unmeaning punctuation. The only difference between the two exhibits, the enrolled and signed act on file in the clerk's office of this Court, and the printed act, is the punctuation. Unless, therefore, punctuation is held to be an essential part of an act as passed by the Legislature, this act as signed by the Governor, and as printed in the statute book, is the same act passed by the Legislature, and not another or different act, and is not invalid because of merely inaccurate punctuation or the absence of punctuation. If the punctuation can be supplied, or altered, so as to render the language of the act intelligiblle, and to bring it into accord with the obvious purpose of the Legislature, it is the plain duty of the Court to supply the defect or make the change; and as that result can be accomplished in this case by a slight change, and in accordance with decisions of our own, and other, Courts, we can not hold this act to be invalid. In *Weatherly* v. *Mister,* 39 Md. 629, the Court said: "Punctuation may perhaps be resorted to when no other means can be found of solving an ambiguity, but not in cases where no real ambiguity exists except what the punctuation itself creates. In such cases it will not be allowed to confuse a construction otherwise clear."

If the punctuation be disregarded it will be impossible to read the text of this act without instantly and unhesitatingly determining that the sole purpose of the legislature was to put Baltimore county upon the same footing as all the other counties of the State, without altering the law relating to Baltimore City. This purpose will be made clear by striking out the period after the word "Counties," changing the capital E in the word "Every" to a small "e" and inserting a comma after the word "same." The period, and the capital E following, break into two sentences what was evidently designed to be one sentence, and destroys what would other-

wise be the clear meaning of the language used. Almost the identical change now proposed was made in *Manger* v. *Board of Examiners,* 90 Md. 659, JUDGE McSHERRY saying: "Neither bad grammar nor inaccurate punctuation can alter the obvious sense of a legislative enactment. This is necessarily so. The statutes in England are not punctuated in the original rolls; but more or less marks of punctuation appear in them as printed by authority. With us, the punctuation is the work of the draftsman, the engrossers, or the printers. In the legislative body the bill is *read,* so that the ear, not the eye, takes cognizance of it. Therefore, the punctuation is not, in either country, of controlling effect in the interpretation." The same view is held by other Courts of high standing.

In *Martin* v. *Gleason,* 139 Mass. 183, the Court said: "Punctuation may sometimes be properly disregarded." In *Geigers Estate,* 65 Pa. St. 311, JUDGE SHERWOOD said: "No punctuation ought to control a statute;" and in *Randolph* v. *Bayne,* 44 Cal. 366, the Court said: "Punctuation can not be permitted an effect which would lead to absurdity." The repetition in the statute before us of the words, "and in the counties," is meaningless as the punctuation stands, because the counties are provided for by the earlier use of the same words; but when the punctuation is changed as indicated, the meaning of the latter words becomes apparent, and legal effect is given to their use.

We, therefore, fully concur in the interpretation of this act by the learned judge of the Circuit Court.

The appellants suggested that in any event they were entitled to a lien for the work done, and that the bill should have been retained for that purpose.

But the contract in this case was an indivisible contract upon its face for labor and materials, and in *Evans Marble Company* v. *The International Trust Company,* 101 Md.

210, it was held under such a contract there was no enforceable lien whatever.

The bill was, therefore, properly dismissed.

> *Decree affirmed, with costs to the appellees above and below.*