JOHN R. LARKINS *v.* STATE OF MARYLAND.
[No. 35, October Term, 1932.]

*Decided December 9th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*William Curran,* with whom was *Paul B. Mules* on the brief, for the appellant.

*G. C. A. Anderson, Assistant Attorney General,* with whom was *William Preston Lane, Jr., Attorney General, Herbert R. O'Conor, State's Attorney for Baltimore City,* and *Albert H. Blum, Assistant State's Attorney,* on the brief, for the State.

OFFUTT, J., delivered the opinion of the Court.

The appellant in this case was indicted, tried, convicted, and sentenced in the Crminal Court of Baltimore City for an alleged violation of Code, art. 27, sec. 3. The single question presented by this appeal, which was taken from the judgment in that case, is whether the seventh and eighth counts of the indictment describe an offense indictable under that statute.

The indictment contained twelve counts and was returned against the appellant and two other defendants. One of those defendants pleaded guilty, the appellant demurred to the indictment and each count thereof, but the record does not disclose the disposition of the case against the third defendant. The appellant's demurrer was overruled, the case against him went to trial, and at the conclusion of the trial he was found guilty under the seventh and eighth counts and not guilty under the others.

The seventh count charged that the defendant "unlawfully and knowingly did furnish a certain Nina Kelly who was then and there a woman pregnant with child, with advice, information, direction and knowledge for the purpose of causing a miscarriage and abortion of her the said Nina Kelly so being then and there pregnant with child as aforesaid, during the period of her pregnancy."

The eighth count charged that they "unlawfully did furnish a certain Nina Kelly who was then and there a woman pregnant with child, with advice, information, direction and knowledge as to where advice, information, direction and knowledge might be obtained by her the said Nina Kelly for

the purpose of causing a miscarriage and abortion of her the said Nina Kelly so being then and there pregnant with child as aforesaid, during the period of her pregnancy."

So much of the statute as is relevant to the immediate inquiry reads as follows: "Any person who shall knowingly advertise, print, publish, distribute or circulate, or knowingly cause to be advertised, printed, published, distributed or circulated, any pamphlet, printed paper, book, newspaper notice, advertisement or reference containing words or language giving or .conveying any notice, hint or reference to any person, or to the name of any person, real or fictitious, from whom, or to any place, house, shop or office, where any poison, drug, mixture, preparation, medicine or noxious thing, or any instrument or means whatever, for the purpose of producing abortion, can be procured, or who shall knowingly sell, or cause to be sold any such poison, drug, mixture, preparation, medicine or noxious thing. or instrument of any kind whatever; or from whom any advice, direction, information or knowledge may be obtained for the purpose of causing the miscarriage or abortion of any woman pregnant with child, at any period of her pregnancy, or shall knowingly sell or cause to be sold any medicine, or who shall knowingly use or cause to be used any means whatsoever for that purpose, shall be punished by imprisonment in the penitentiary for not less than three years, or by a fine of not less than five hundred dollars nor more than one thousand dollars, or by both, in the discretion of the court."

It appears from a comparison of the two counts of the indictment with the statute that they rest upon the language of that part of it which declares that "any person * *.* from whom any advice, direction, information or knowledge may be obtained for the purpose of causing the miscarriage or abortion of any woman pregnant with child * * *" shall be punished, etc., as though the words "from whom any advice * * * may be obtained" are immediately referable and relate to the words "any person" at the beginning of the section. If they are so referable, that clause, completed by the addition of the words "any person," would read "any person

from whom any advice, direction * * * may be obtained for the purpose of procuring the miscarriage or abortion of any woman * * * shall be punished," etc. But appellant contends that they are not so referable, and that that clause does not make the act of furnishing oral information, etc., even though furnished for the purpose of procuring an abortion, a criminal offense.

It may be conceded that the literary structure of the section is ungrammatical, that it is not properly punctuated, that the collocation of sentences is awkward, and that those defects obscure its meaning. Nevertheless, if the intent of the Legislature is manifest in the statute, it should be construed so as to effect that intent, rather than to defeat it, where such a construction is not inconsistent with its actual words. To reach that end, errors in grammar and punctuation occurring in the statute may be disregarded. *Dunn v. Brager,* 116 Md. 242, 250, 81 A. 516; *O'Brien v. State,* 126 Md. 273, 94 A. 1034. And as stated in 25 *R. C. L.* 966: "The application of the general rule that the intention of the legislature is to be determined from the language of the statute is not to be affected by the fact that the phraseology may be awkward, slovenly or inartificial. Language which has a distinct meaning, however awkward and inept, must be held to express the legislative will, and the facility with which the legislature might have expressed itself more appropriately or more directly will not authorize a court to disregard the natural sense of the words actually used."

Returning to the statute, it is apparent from its language that in its adoption the general intent of the Legislature was to stigmatize, define, and punish as crimes acts done for the purpose of procuring abortions or which with that end in view made accessible knowledge, instrumentalities, or means by which an abortion might be procured. To effect that intent the statute sought to prevent (1) by the dissemination of written or printed matter, of information as to the places where, or the persons from whom, instrumentalities or information for procuring an abortion might be obtained,

(2) the sale of instrumentalities or means, and (3) the use of instrumentalities or means, for that purpose.

But the seventh and eighth counts of the indictment are based upon the theory that the statute goes beyond that and includes within its denunciation information, advice, knowledge, or direction furnished orally as to where information, advice, knowledge, or direction may be procured for the purpose of procuring an abortion. And if the third clause of the statute can be construed as a separate classification of the offenses which the statute defines, those counts are good. But while that clause is the third in sequence, its apparent purpose was not to define a separate and distinct offense, but to extend the scope of the definition contained in the first clause, so as to include notice by written or printed matter not only of persons from whom instrumentalities or means for procuring an abortion might be obtained, but also the names of persons from whom, or places where, information, knowledge, direction, or advice for the purpose of procuring an abortion might be obtained. And in that connection it is significant that, in each of the other four offenses defined by the statute, scienter is a necessary ingredient, while if the third clause is to be regarded as creating a separate and independent offense, it is entirely consistent with its language that one from whom advice "may be obtained" for the purpose of procuring an abortion may be guilty of that offense although he did not know for what purpose the information or advice was to be used. So that if an abortioner, for his own evil purposes, in order to facilitate his unlawful and revolting trade, were to obtain from a reputable physician or scientist information "for the purpose of procuring an abortion," the physician or scientist would under the statute be guilty of the offense thus defined even though he may have had no knowledge of the use to be made of the information which he furnished. And then the use of the word "or" in connection with "from" in beginning the third clause, while following naturally and properly the comma at the end of the first clause, cannot be logically connected with the words "any person" at the beginning of the whole section.

Again, if the third clause is taken as independent of the first, while the latter would forbid the dissemination by advertisement or publication of printed or written matter conveying notice of where means and instrumentalities might be obtained for procuring an abortion, it would not prevent the dissemination, by like methods, of information as to where advice, information, direction, or knowledge might be obtained for such a purpose. And since the advertisement of an abortioner's business would be quite as obnoxious to the apparent legislative intent as the advertisement of the business of those dealing in the instrumentalities and means for procuring abortions, it may be assumed that the Legislature meant to include that prohibition in the statute. But it cannot be so included unless the second and third clauses of the section are transposed. If that is done, the entire section becomes coherent and orderly, with its several parts in natural and intelligible sequence. And that appears to have been the construction which this court placed upon it in *Lamb v. State,* 67 Md. 524, 10 A. 208, 298.

The present statute has not been amended since that decision, and consequently there the court had before it the identical language now under consideration. The second count of the indictment in that case was as follows: "And the jurors aforesaid, upon their oath aforesaid, do further present, that the said John C. Lamb, on the first day of April, in the year eighteen hundred and eighty-five, at Baltimore County aforesaid, unlawfully and wickedly did advise, solicit and incite one Rachel A. Taylor, then and there being a pregnant woman, to take and swallow a large quantity of a certain substance, medicine, and noxious and poisonous drugs and preparations, to the jurors aforesaid unknown, for the purpose of causing the miscarriage and abortion of her, the said Rachel A. Taylor, then and there pregnant with child as aforesaid, and thereby to commit the crime of abortion against the peace, government and dignity of the State." A demurrer to that count was overruled, the traverser was tried, convicted, and sentenced, and from his sentence and judgment he appeals. In considering the sufficiency of that count

this court said: "The traverser was not regarded by the court below as having incurred the penalties prescribed by the statute of 1868. These are imprisonment in the penitentiary for a term not less than three years, or fine, or by both fine and such imprisonment. This statute made great changes in the pre-existing law. It made it highly penal to give notice by advertisement, printing or publication of any place where any means could be procured for the purpose of producing abortion, or where any advice, direction, information or knowledge could be obtained for the purpose of causing the miscarriage or abortion of any pregnant woman at any period of her pregnancy; and it also prescribed punishment for every person who should sell or cause to be sold, any medicine for this purpose, or who should knowingly use, or cause to be used, any means whatsoever for the same. It excepted from its provisions certain operations by regular medical practitioners." And at the conclusion of the opinion it said: "The act described in the second count is extremely immoral, and very offensive to the sensibilities of all virtuous people, but we have no power to make a law for its punishment. The demurrer to the second count ought to have been sustained, and, as the traverser was acquitted on the first count, he ought to have been discharged." But if the statute can be construed as forbidding oral advice or direction for the purpose of procuring an abortion, the demurrer to the count under consideration in that case should have been overruled, for it in so many words charges that the traverser did "advise, solicit and incite" a pregnant woman to take certain drugs for the purpose of producing an abortion. But the court overruled the demurrer upon the express ground that "the acts charged upon the traverser" were not comprehended in the terms of the statute. The indictment in that case concluded at common law, but that conclusion was sufficient to bring it within the statute, if the facts alleged were sufficient to charge an offence under the statute. Code, art. 27, sec. 554. And Alvey and Irving, JJ., while dissenting on the ground that the solicitation of a misdemeanor is a crime at common law, nevertheless appear to have accepted the con-

clusion of the majority that under the statute the mere act of giving advice or direction for the purpose of procuring an abortion is not a crime.

The appellee attempts to distinguish that case from this on the ground that the indictment there was at common law, but that was quite immaterial if the facts alleged in it constituted an offense under the statute (Code, art. 27, sec. 554), so that the question before the court was whether the facts stated an offense either at common law or under the statute. The cases of *Bittle v. State,* 78 Md. 528, 28 A. 405, and *Jones v. State,* 70 Md. 328, 17 A. 89, cited in support of the appellee's contention, instead of supporting, negative the proposition to which they are cited. In *Bittle v. State,* it was decided that since *Lamb v. State* "it is settled law here that the bare act of solicitation to commit a misdemeanor is not in itself an indictable offense." And in *Jones v. State,* Judge McSherry, with the clarity and precision which marked his opinions, speaking for the court, said: *"Lamb v. State,* 66 Md. 285, 7 A. 399, has no application here. The second count of the indictment in that case, which was the only count before this court, and therefore the only one which was reviewed, was not framed under the act of 1868, and did not charge an offense punishable by it." It is, of course, consistent with that statement that, if the second count of the indictment in *Lamb v. State* had charged an offense punishable by the statute, it would have been sustained. And that it would have charged such an offense if the State's contention in this case is accepted is inevitable, for there is no reasonable or logical distinction between the act of advising a pregnant woman to take certain drugs to procure an abortion, alleged in that count, and the act of giving such a woman advice for the purpose of causing an abortion, which would be within the language of the statute as construed by the appellee.

It follows that the second and third clauses of the section should be read as if transposed, and the third clause integrated with the first, so that it would read as follows: "Any person who shall knowingly advertise, print, publish, distribute or

circulate, or knowingly cause to be advertised, printed, published, distributed or circulated, any pamphlet, printed paper, book, newspaper notice, advertisement or reference containing words or language giving or conveying any notice, hint or reference to any person, or to the name of any person, real or fictitious, from whom, or to any place, house, shop or office, where any poison, drug, mixture, preparation, medicine or noxious thing, or any instrument or means whatever, for the purpose of producing abortion, can be procured, or from whom any advice, direction, information or knowledge may be obtained for the purpose of causing the miscarriage or abortion of any woman pregnant with child at any period of her pregnancy, or who shall knowingly sell, or cause to be sold any such poison, drug, mixture, preparation, medicine or noxious thing or instrument of any kind whatever. * * *" etc.

Any possible doubt of the correctness of that conclusion disappears upon a comparison of the language of chapter 179, sec. 2, of the Acts of 1868, which appears also in article 72, Code of 1878, section 16, with article 27, section 3, from which it appears that through some error the words "or from whom," which begin the third clause of the section in the present Code and the Code of 1888, were substituted for the words "or where" contained in the act of 1868 and the Code of 1878.

For the reasons stated the demurrers to the seventh and eighth counts of the indictment should have been sustained, and it follows that the judgment appealed from must be reversed.

*Judgment reversed.*