(No. 41522.—

THE METROPOLITAN SANITARY DISTRICT OF GREATER CHICAGO, Appellee, *vs.* UNITED STATES STEEL CORPORATION, Appellant.

*Opinion filed Nov. 22, 1968.—Rehearing denied Jan. 28, 1969.*

Henry L. Pitts, Jay A. Lipe, and Jeremiah Marsh, all of Chicago, (Hackbert, Rooks, Pitts, Fullagar & Poust, of counsel,) for appellant.

Allen S. Lavin and Phillip Rothenberg, both of Chicago, (Fred F. Herzog, of counsel,) for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

The circuit court of Cook County, upon the complaint of the Metropolitan Sanitary District of Greater Chicago, entered a temporary injunction restraining the defendant, United States Steel Corporation, "from polluting the waters of Lake Michigan by discharging any oil or oily substances into the waters of Lake Michigan, which oil or oily substances would be visibly floating on the surface of said waters." The defendant appealed to the appellate court, but because of the importance of the issues raised, this court, acting on its own motion under Rule 302(d), ordered the appeal transferred to this court.

In its findings of fact the circuit court found that on February 29, March 1, and March 5, 1968, "there was an

oil slick coming out of the [defendant's] North Slip into the Calumet Harbor and that the oil amounted to, variously, between two or three gallons to as much as four to six gallons, extending over an area of some six thousand feet by fifty feet wide, the oil slick polluting the waters on which it was floating, the discharge of which was unintentional." An expert witness on behalf of the District testified at length as to the deleterious effects of visible oil slicks upon aquatic life and water quality. In response to a hypothetical question, he also expressed his opinion that a visible oil deposit of the size emitted by defendant would, if continuously fed, reach the intake of the South Side water filtration plant of the city of Chicago in one to three days. If this occurred, special carbon filtration, at additional cost, would be necessary to keep the water from having a bad taste and bad smell. The slick would also reach the beaches where it would accumulate, emit odors and stenches, stain clothes, and stick to the skin of bathers. His testimony was not controverted.

The defendant presents several contentions which challenge the authority of the District to interfere with the alleged pollution. Because the boundaries of the District (Ill. Rev. Stat. 1967, chap. 42, par. 361) extend only to and along the shore of Lake Michigan, the defendant argues that the District has not been authorized to control the quality of the water in the lake itself. This contention, however, overlooks the authority of the District under section 7aa of the statute (Ill. Rev. Stat. 1967, chap. 42, par. 326aa), which is the section upon which this action is based. That section gives the District "the power and authority to prevent the pollution of any waters from which a water supply may be obtained by any city, town or village within the district." Since the water supply of the city of Chicago and of many other cities and villages in Illinois is obtained from that part of Lake Michigan that is affected by the type of deposits which were the subject of the in-

junction, the authority of the District to maintain the present action is clear.

The defendant next contends that the District's attempt to control pollution in Lake Michigan conflicts with a Federal program dealing with the same subject matter and that the Supremacy Clause of the United States Constitution requires this court to nullify the General Assembly's grant of power to the District. But the statute establishing the Federal program (33 U.S.C., secs. 466-466n) specifically expresses the intent of Congress not only to permit, but also to encourage, local pollution control of the kind undertaken here by the District. Section 466 is particularly instructive. Subsection (b) provides that "[I]t is declared to be the policy of Congress to recognize, preserve, and protect the primary responsibilities and rights of the States in preventing and controlling water pollution  *   *   *." Similarly, subsection (c) directs that the Act shall not be "construed as impairing or in any manner affecting any right or jurisdiction of the States with respect to the waters [including boundary waters] of such States." See also 33 U.S.C., sec. 466g(b) ; House Report No. 1446, 84th Cong., 2d Sess. (reprinted in 2 U.S. Code, Cong. & Admin. News (1956), 3023, 3026.) These provisions eliminate any doubt as to the compatibility of Federal and State efforts to control the pollution of water.

The defendant also urges that section 7aa is unconstitutionally vague because it does not define the term "pollution". But the action authorized by the statute closely resembles the established suit in equity to restrain, as a nuisance, the pollution of a water supply (see, *Martin* v. *Gleason* (1885), 139 Mass. 183, 29 N.E. 664; *City of Baltimore* v. *Karren Mfg. Co.* (1882), 59 Md. 96; Anno. 72 A.L.R. 673), and we are statisfied that such a statutory authorization need not delineate, with scientific precision, the characteristics of all types of pollution. We are concerned in this case only with the emission of oil in quanti-

ties sufficient to form a visible floating mass. The deleterious consequences of such a mass were described in the record, and that testimony has not been controverted.

Finally, the defendant contends that section 7bb of the Act (Ill. Rev. Stat. 1967, chap. 42, par. 326bb) somehow operates to dilute the authority conferred by section 7aa, but we do not agree. Section 7bb basically contemplates administrative hearings, terminating in notices to discontinue pollution, and the assessment of penalties upon failure to do so. Recourse to an injunction may also be had to prevent discharges contrary to the orders of the District. Section 7bb includes in its definition of "pollution", wastes which "contain oil, grease, or floating solids which may cause unsightly appearance on the surface of such waters, or contain soluble materials detrimental to aquatic life, all beyond the content of such like substances present in an equal volume of the effluent discharged from the sewage treatment works of any such sanitary district." That section thus recognizes floating oil as pollution, and the record does not establish that the District discharges floating oil. In these provisions we see no legislative purpose to revoke the long standing authority granted by section 7aa to seek the aid of a court of equity directly, and without the delay attendant upon administrative proceedings, in order to protect municipal water supplies.

The contention that section 7aa invalidly delegates authority to the District is similarly without merit, for this section of the statute delegates to the District only the authority to institute an action for an injunction.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*