LLOYD A. FRY ROOFING COMPANY, Petitioner, v. THE POLLUTION CONTROL BOARD et al., Respondents.

(No. 56629;

First District (2nd Division)—May 28, 1974.

302

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago, for respondents.

DePaul Law Clinic, of Chicago, for respondents Louis Hemmerich *et al.*

Mr. JUSTICE STAMOS delivered the opinion of the court:

This is a petition for review of an order of the Pollution Control Board.[1] The Board denied petitioner Fry Roofing Company (hereinafter Fry) a variance from the Environmental Protection Act,[2] found that Fry has

---

[1] Ill. Rev. Stat. 1971, ch. 111½, par. 1041; Ill. Rev. Stat. 1971, ch. 110A, par. 335.

[2] Ill. Rev. Stat. 1971, ch. 111½, par. 1001 *et seq.*

caused air pollution as defined by sections 3(b) and 9(a) of the Act[3] and has emitted particulates into the atmosphere in an amount exceeding the limits set forth in the Rules and Regulations Governing the Control of Air Pollution. The Board ordered Fry to cease and desist the emission of particulates, and assessed a penalty against Fry in the amount of $50,000 for violation of the Act and the Rules and Regulations.

Fry contends that: 1) the Environmental Protection Act is unconstitutional in that: (a) it is vague and indefinite; (b) unlimited discretion and legislative power is delegated to the Pollution Control Board; (c) the Act confers judicial power upon an administrative agency; (d) application of the Act results in a denial of equal protection of law; and (e) the Act denies the right to a jury trial; 2) the hearing was unfair in that: (a) the Board did not "hear" the evidence because the Board members are not required to attend the hearing; (b) the hearing officer did not comply with his duty to exclude immaterial and prejudicial evidence as required by the Act; (c) the hearing officer was not impartial; and (d) Fry was denied its right to submit a brief and argument before the Board; and 3) the decision of the Board is not supported by competent, sufficient evidence.

Fry is one of the world's largest manufacturers of asphalt roofing operating 24 plants in various parts of the United States. The facility involved in the present proceeding is located in Summit, Illinois. The Vollney Felt Mill occupies the same premises, supplying the felt used in the operation. The Trumbull Asphalt Company, while purportedly being a separate entity unconnected with Fry, is located contiguous to the Fry plant in Summit as it is in other parts of the country where Fry plants are located, and supplies the asphalt used in Fry's manufacturing process.

On January 7, 1971, Fry filed a petition for a variance from the provisions of the Environmental Protection Act. The petition stated that Fry had installed no control equipment because of possible relocation problems caused by the proposed South-West Expressway. On February 26, 1971, a complaint was filed before the Pollution Control Board by members of a community group known as S.O.R.E.[4] The complainants

---

[3] Ill. Rev. Stat. 1971, ch. 111½, pars. 1003(b), 1009(a).

[4] At the time of the filing of this complaint, another cause was pending in the Circuit Court of Cook County against Fry. (*County of Cook v. Lloyd A. Fry Roofing Co., Inc.* 71 Ch 585.) A consent order, in which Fry agreed to install emission control equipment, was entered in that suit before the termination of the instant hearing before the Board.

alleged "that Respondent Fry did, on February 17, 1971, cause and allow the discharge and emission into the environment of contaminants so as to cause or tend to cause air pollution in Illinois, and further that Respondent Fry has engaged and continues to engage in a pattern of conduct such as to cause and allow the discharge and emission into the environment of contaminants so as to cause or tend to cause air pollution in Illinois." Such allegations clearly allege violations of section 9(a) of the Act and inform Fry of the manner of the alleged pollution. However, the complaint does not allege violations of the Rules and Regulations promulgated by the Board.

Section 31 of the Act [5] requires that the complaint state "the manner in, and the extent to which such person (the person complained against) is said to violate this law." Notice to the alleged violator is a fundamental element of due process. Charges in an administrative proceeding need not be drawn with the same refinements as pleadings in a court of law, but the charges must be sufficiently clear and specific to allow preparation of a defense. (*Greco v. State Police Merit Board,* 105 Ill.App.2d 186, 245 N.E.2d 99.) Section 31 requires notice of a specific violation charged and notice of the specific conduct constituting the violation. (See *Citizens Utilities Co. v. Pollution Control Board,* 9 Ill.App.3d 158, 289 N.E. 2d 642.) In addition P.C.B. Procedural Rule 304(c)(2) requires that the complaint contain "a concise statement of the facts upon which the respondents are claimed to be in violation."

■■ In the instant case the complaint did not allege violations of the Rules and Regulations Governing the Control of Air Pollution. Therefore, the Board improperly found Fry in violation of the Rules and Regulations, and we reverse that part of the Board's order. We do not believe that this defect was cured by the facts that the hearing on Fry's petition for a variance from the Rules and Regulations was consolidated with the enforcement proceedings based upon the complaint, and that Fry introduced evidence regarding its emission rates which are governed by the Regulations. Therefore we will consider only that evidence concerning a violation of section 9(a) of the Act.

A lengthy hearing covering more than 900 pages in the record was held before the hearing officer. In order to consider defendant's contentions, the testimony and evidence adduced must be summarized. Geddam Reddy, an engineer employed by the Environmental Protection Agency, testified on direct examination that, from a reading of generally accepted treatises on air pollution emission factors, he was convinced that emissions from asphalt roofing companies are carcinogenic and

---

[5] Ill. Rev. Stat. 1971, ch. 111½, par. 1031.

dangerous to human health. He stated that since Fry had no emission control equipment, it was emitting carcinogenic materials. Near the end of the hearing, the hearing officer struck the direct testimony of this witness on the basis that he had never visited the Fry plant and had not inspected it. Reddy was later called by Fry and stated that Fry Exhibit 1, United States Environmental Protection Agency Manual (1971 preliminary draft), was a generally accepted emission standard manual.

Ronald Kluszewski, a trustee of the Village of Summit, testified as to the contents and background of a resolution passed by the trustees on January 18, 1971, requesting a denial of Fry's variance application, and also requesting that Fry be required to comply with pollution control laws and regulations. He also testified to complaints from citizens and to his opinion as to public feeling. Finally, he testified that he was able to pinpoint the "obnoxious" odor as emanating from Fry and that it interfered with his enjoyment of his home.

The Summit chief of police also testified to complaints regarding the odors emitted by Fry. Sixty-three complaints from 1966 were introduced into evidence; many of these pertained to Trumbull Asphalt Company and did not name Fry. The witness stated that he had gotten approximately 20 complaints per year since he became chief in 1966; none of these were introduced into evidence.

A Vista volunteer testified to being present at a meeting on December 18, 1970, with Lloyd Fry, Jr., and members of S.O.R.E. Mr. Fry told the group that he knew that he was polluting, but S.O.R.E. could take him to court to make him stop. This witness also testified that his understanding of the law was that Fry would be compensated for control equipment if the plant was condemned for the proposed highway, and that this was discussed at the meeting.

Approximately 12 members of S.O.R.E. then testified. Affidavits from all these witnesses were introduced into evidence. These affidavits related that on February 17, 1971, the affiants observed gray smoke and a sickening odor being emitted from the Fry smokestacks, and that this odor interfered with their enjoyment of their property and environment. Many of these affidavits related incidents prior to February 17, 1971, and subsequent to that date in which the smoke and odor emanating from Fry produced ill effects. One of the affidavits contained newspaper articles reflecting public concern over Fry's operation; two affidavits contained information regarding Fry's operations and lawsuits in three other states. One witness testified that S.O.R.E. has received 111 complaints regarding Fry during December and January of 1971 and 1972. These witnesses were cross-examined extensively by Fry as to their certainty in identify-

ing the source of the odors they attributed to Fry, and as to the contents of their affidavits.

The complainants also called Lloyd Fry, Jr., and Harvey Hoffman, the former director of environmental control at the Fry plant, as adverse witnesses. Fry stated that he did not know what type of particulates the plant was emitting, and did not know of an injunction against the Fry plant in California. Hoffman was questioned regarding the pollution control equipment installed in Fry's other plants.

William Zenisek, an expert witness for the Environmental Protection Agency testified that he visited Fry in 1968 and 1971 and estimated the emissions rate from the United States Environmental Protection Agency Manual, 1968 (E.P.A. Exhibit 1). No tests were conducted on the Fry plant to determine actual emission rates. This witness testified that there is no official update of the 1968 manual, only preliminary revisions. Air Pollution Engineering Manual, U.S. Department of Public Health, 1967, was also introduced into evidence (E.P.A. Exhibit 3) as depicting the state of the art as it relates to asphalt saturators and the control of emissions.

Steven Rosenthal, an environmental protection engineer employed by the Environmental Protection Agency testified that he visited the Fry plant two or three times in 1971, and observed a disagreeable odor. He computed the Fry emission rate from the 1968 Environmental Protection Agency Manual. He stated that in his opinion the wood flour he observed on the premises was the result of a violation. The recommendation of the Environmental Protection Agency, which stated that Rosenthal had made three inspections of the area and had noted a piercing stench, was introduced into evidence. The recommendation also stated that Fry was not complying with section 9(a) of the Act and Rule 3—3.11 of the Rules and Regulations regarding emission rates. Fry made a motion to call Mr. McCreery of the Agency who purportedly wrote the recommendation; the hearing officer held that Rosenthal signed it and only he was required to testify.

Fry called its plant manager who testified to the saturating process, and stated that to his knowledge "nothing goes out of the stacks," with the exception of steam. He also testified that the stacks did not have hoods to catch emissions, but that the installation of such hoods was planned.

Petitioner's first constitutional argument is that the Environmental Protection Act is unconstitutionally vague and indefinite. Section 9(a) of the Act [6] provides:

[6] Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a).

"No person shall:

(a) Cause or threaten to allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the Board under this Act; * * *."

Section 3(b) of the Act [7] states that:

" 'Air Pollution' is the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property."

Section 3(d)[8] states that:

" 'Contaminant' is any solid, liquid or gaseous matter, any odor, or any form of energy, from whatever source."

■■ At the outset, we acknowledge that all presumptions are in favor of the constitutionality of legislation (*Gadlin v. Auditor of Public Accounts*, 414 Ill. 89, 110 N.E.2d 234), and petitioner has the burden of clearly proving unconstitutionality. Statutes directed at control of pollution in the environment are intended to encompass infinitely variable conditions. Therefore, flexibility and adaptability are required. In addition, the above definitions in this Act, taken together, are clear and easily understandable. All types of contaminants and "pollution" need not be scientifically delineated in a statute of this kind.[9] *Metropolitan Sanitary District v. United States Steel Corp.*, 41 Ill.2d 440, 243 N.E.2d 249.

■■ Petitioner's next contentions are that the Act confers unlimited legislative discretion and judicial power upon the Pollution Control Board. Petitioner's argument that the delegation of authority to interpret the Act and to make rules and regulations is an abdication of legislative responsibility is not persuasive. There is no clear line separating excessive and permissive delegations of legislative authority. A reading of sections 9(a), 3(b) and 3(d) indicates that the legislature has provided some standards in the Act. Section 5(b) provides:

---

[7] Ill. Rev. Stat. *supra,* par. 1003(b).

[8] Ill. Rev. Stat. *supra,* par. 1003(d).

[9] We note that these sections are as clear as those used in the statutory framework of other states' pollution statutes. See *Houston Compressed Steel Corp. v. Texas* (Tex. Civ. App.), 456 S.W.2d 768; *Air Pollution Commission v. Coated Material Co.* (Pa. Ct. Comm. Pl.) IERC 1444; *Department of Health v. Owens—Corning Fiberglas Corp.* 100 N.J. Sup. 366, 242 A.2d 21, *aff'd,* 53 N.J. 248, 250 A.2d 11.

"The Board shall determine, define and implement the environmental control standards applicable in the State of Illinois and may adopt rules and regulations in accordance with Title VII of this Act."

The discretionary power delegated to the Board is clearly limited by the section 5(b) requirement that the Board determine standards. We are in agreement with the decisions of the courts in *Ford v. Environmental Protection Agency*, 9 Ill.App.3d 711, 292 N.E.2d 540, *Bath, Inc. v. Pollution Control Board*, 10 Ill.App.3d 507, 294 N.E.2d 778, and *City of Monmouth v. Environmental Protection Agency*, 10 Ill.App.3d 823, 295 N.E. 2d 136, that the authority and powers bestowed on the Board to make rules and adjudicate cases are in keeping with the spirit of the Environmental Protection Act for the practical application and operation of the Act. See also *Reif v. Barrett*, 355 Ill. 104, 188 N.E. 889.

■■ In addition, we hold that the authority to impose monetary penalties granted by sections 33(b) and 42 of the Act[10] does not constitute a prohibited grant of judicial power.[11] Our supreme court has recently decided the issue by holding that the discretionary power to impose penalties is reasonably necessary to accomplish the legislative purpose of the agency, and therefore, does not violate the constitutional separation of powers. *City of Waukegan v. Pollution Control Board*, 57 Ill.2d 170, 311 N.E.2d 146.

Petitioner's final constitutional arguments are that the Act denies it equal protection of law and its right to trial by jury. Petitioner argues that section 44 of the Act[12] provides that violations shall constitute misdemeanors, and that, therefore, one person may be charged with a violation before the administrative agency while another person may be charged with the same violation in a criminal proceeding.

■■ The fourteenth amendment requires that all persons subject to legislation "shall be treated alike, under like circumstances and conditions, both in privileges conferred and in liabilities imposed." (*Hayes v. Missouri*, 120 U.S. 68, 71-72.) The provisions of the Environmental Pro-

---

[10] Ill. Rev. Stat. 1971, ch. 111½, pars. 1033(b), 1042.

[11] The proceeding before the Board was a combination variance *and* enforcement proceeding. Therefore, the Board did not exceed its statutory authority to impose fines in enforcement proceedings. (Ill. Rev. Stat. 1971, ch. 111½, pars. 1033(b), 1042). The Board may not impose fines in the context of a variance proceeding. *Citizens Utilities Co. v. Pollution Control Board*, 9 Ill.App.3d 158, 289 N.E.2d 642; *City of Mattoon v. Environmental Protection Agency*, 11 Ill.App.3d 259, 296 N.E.2d 383.

[12] Ill. Rev. Stat. 1971, ch. 111½, par. 1044.

tection Act and the regulations of the Board are equally applicable to all persons in Illinois. Petitioner has shown no discrimination or abuse of discretion in bringing administrative actions. On the contrary, the Act provides that enforcement actions be brought before the Board. *Ford v. Environmental Protection Agency, supra.* See also *State v. Lloyd A. Fry Roofing Co.* 9 Ore.App. 135, 495 P.2d 751, *remanded on other grounds,* 502 P.2d 253.

■■ We are also unable to agree with petitioner that the Act is applied in a capricious or arbitrary manner because actions for violation of the Act can be brought against persons, even though they may be in compliance with the regulations, and even though section 49(e) of the Act [13] states that compliance with the regulations is a prima facie defense to an action. It is sufficient to point out that violations of the Act occur whenever a person causes or tends to cause "air pollution" *or* violates the rules and regulations adopted by the Board. (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a).) Compliance with the regulations is a prima facie defense, but it is not a complete defense.

■■ Petitioner's contention that the Act deprives it of its constitutional right to trial by jury is also without merit. The Constitution of 1970 [14] provides that "[t]he right of trial by jury as heretofore enjoyed shall remain inviolate." This language is identical to that in the Constitution of 1870, and has been interpreted to secure the right of jury trial as it existed at common law. (*Stephens v. Kasten,* 383 Ill. 127, 48 N.E.2d 508.) In the instant case, the Act provides for the creation of an administrative agency to enforce the Act. The constitutional guarantee of right to trial by jury was never intended to apply to administrative proceedings which were unknown at common law, and therefore, petitioner cannot argue that this right has been abridged. *Ford v. Environmental Protection Agency, supra.*

Petitioner next argues that the Pollution Control Board's order must be reversed because petitioner was denied a fair and impartial hearing. Due process of law requires that an administrative hearing be fair. (*Smith v. Department of Registration & Education,* 412 Ill. 332, 106 N.E.2d 722.) In administrative review, it is our duty to review the manner in which evidence was adduced before the administrative agency. From petitioner's specific allegations of unfairness, we cannot conclude that the administrative hearing in this case was not fair and impartial.

■■ Petitioner asserts that the Act itself precludes a fair hearing because none of the Board members personally hear the evidence and the

---

[13] Ill. Rev. Stat. 1971, ch. 111½, par. 1049(e).

[14] Ill. Const. 1970, art. I, § 13.

hearing officer merely receives the evidence without participating in the decision-making process. The United States Supreme Court has held that in administrative proceedings "there must be a hearing in a substantial sense." (*Morgan v. United States*, 298 U.S. 468, 481.) In the instant case, the Act requires the Board to make its determinations after "due consideration of the written and oral statements, the testimony and arguments that shall be submitted at the hearing, * * *." (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(a).) Thus we must conclude that the decision-making procedure set forth in the Act conforms to the *Morgan* requirement that "the officer who makes the determinations must consider and appraise the evidence." *Morgan v. United States, supra,* at 582; see also *Des Plaines Currency Exchange, Inc. v. Knight,* 29 Ill.2d 244, 194 N.E.2d 89.

■■ Petitioner also argues that the hearing was unfair because the hearing officer failed to exclude irrelevant, prejudicial testimony as required by Procedural Rule 320(b). Although we agree that incompetent evidence was admitted into evidence (we note that evidence was adduced regarding events outside the time scope of the complaint), we are not compelled to conclude that substantial unfairness or an overall denial of justice resulted. The Act requires the Board to file a written opinion stating the facts and reasons for its decision (Ill. Rev. Stat. 1971, ch. 111½, par. 1033(a)), and its decision must be based upon competent evidence. The admission of incompetent evidence is not reversible error if there is substantial evidence to sustain the decision of the Board. (See *Yiannopoulos v. Robinson,* 247 F.2d 655 (7th Cir.).) A failure to observe the technical rules of evidence is not sufficient reason to set aside an agency's decision unless the error materially affects the rights of a party and results in substantial injustice to him. (Administrative Review Act, Ill. Rev. Stat. 1971, ch. 110, par. 275(2).) Our perusal of the record reveals no instance where the ruling of the hearing officer resulted in substantial injustice to Fry.

■■ Likewise, we are not convinced that the hearing officer was biased, and actively participated in proving petitioner's guilt. It is an established principle that the decision of an administrative agency will be set aside if the prejudice or bias of the hearing officer results in an unfair hearing. (*Gigger v. Board of Fire & Police Commissioners,* 23 Ill.App.2d 433, 163 N.E.2d 541.) Upon our review of the record, we are satisfied that the hearing officer conducted the proceedings in a fair and impartial manner. The "expert" testimony of the Agency's engineer, Reddy, was stricken from the record when the hearing officer became aware that Reddy had no personal knowledge of the Fry plant. The hearing officer's instructions to complainant's attorney regarding founda-

tion for a witness's testimony, a letter to the Board stating that the evidence from the Agency would hopefully produce a "knowledgeable expert", the introduction of police reports from 1966, the introduction of testimony regarding community feeling and lawsuits against Fry in other States, the narrative testimony of certain witnesses, and the hearing officer's interrogation of the witnesses are interpreted by us as a conscientious effort by the hearing officer to "insure development of a clear and complete record," as required by the Board's regulations. (Pollution Control Board Regulations, section 115.) In addition, petitioner was represented by counsel and was offered the opportunity to prepare a defense and introduce evidence, and all of the testimony adduced at the hearing was subject to cross-examination. From the above state of the record, we are of the opinion that the hearing was conducted as a fact-finding proceeding with a view toward achieving substantial justice.

As a final assertion of procedural unfairness, petitioner argues that it was denied its right to file a written brief to the Board as permitted by the Board's regulations. (Pollution Control Board Regulations, section 330.) Petitioner does not contend that it was denied the opportunity to present argument, offer testimony or cross-examine witnesses as required by the Act,[15] or that the Board issued its order without considering the statements, testimony and arguments submitted at the hearing as required by the Act.[16] The intent of the legislature, as seen from the Act itself, was to afford parties procedural due process. In the case at bar, the hearing conformed to fundamental principles of justice, and we construe the regulation providing that written briefs may be filed as a discretionary provision only. The Board did not abuse its discretion in rendering its order without considering briefs from the parties.

Petitioner's final contention is that the decision of the Board must be overturned because there is not substantial, competent evidence upon which to base that decision. Petitioner maintains that the decision was based on irrelevant allegations and prejudicial conclusions.

It is well established that a reviewing court may examine findings of an administrative agency to determine if they are supported by sufficient, competent evidence. (*St. James Temple of the A.O.H. Church of God, Inc. v. Board of Appeals*, 100 Ill.App.2d 302, 241 N.E.2d 525; *Russell v. License Appeal Com.*, 133 Ill.App.2d 594, 273 N.E.2d 650.

In the instant case, the complaint charged plaintiff with violations of the Act in discharging contaminants into the atmosphere on February

---

[15] Ill. Rev. Stat. 1971, ch. 111½, par. 1032.

[16] Ill. Rev. Stat. *supra*, par. 1033(a).

17, 1971, and causing or tending to cause air pollution. Complaints sought a cease and desist order and a $1,000 fine for the February 17th incident and every other day during which Fry discharged contaminants. The order of the Board ordered Fry to cease and desist and assessed a $50,000 penalty for violations of the particulate emissions provisions of the Rules and Regulations Governing the Control of Air Pollution; for failure to file a letter of intent and air contaminant emission reduction program; and for causing air pollution.

Upon our review of the record, we are convinced that the Board's finding of air pollution by Fry, in violation of section 9(a), is supported by substantial, competent evidence. Section 3(b) of the Act defines air pollution as the presence of sufficient quantity and quality of contaminates as to (1) be injurious to human life, (2) be injurious to plant life, (3) be injurious to animal life, (4) be injurious to health, (5) unreasonably interfere with the enjoyment of life or property. The Board's finding of a violation must rest upon a finding that the alleged pollution resulted in one or more of the above-mentioned situations.

■■ The opinion of the Board erroneously states that it need only find "substantial interference" with the enjoyment of life or property in order to support a finding of violation of the statute. The Board found that the evidence:

> "amply supports a finding of severe nuisance and air pollution as defined in the statute * * * [and that Fry's operation caused] a severe burden and nuisance on the community."

These statements do not provide a necessary recognition of the elements of sections 9(a), 3(b) and 3(d) which are required to support a finding of air pollution. Nowhere in the Board's opinion is there an explicit finding of "unreasonable" interference with the enjoyment of life or property of nearby residents. Our court has recently held that neither a finding of nuisance nor burden on the community amounts to a sufficiently specific finding that Fry "unreasonably" interfered with the enjoyment of life. See *Mystik Tape v. Pollution Control Board*, 16 Ill.App.3d 778, 306 N.E.2d 574.

■■ However, we believe that sufficient, competent evidence was adduced at the hearing to support a finding of unreasonable interference with life and property. Affidavits of members of S.O.R.E. were introduced into evidence. These affidavits related specific instances of pollution by Fry on February 17, 1971, and on subsequent dates (in addition to irrelevant mention of instances prior to February 17, 1971). The affiants testified at the hearing that smoke and odors emanating from Fry interfered with the enjoyment of their property, and that they were able to identify the harmful and irritating odors as emanating from Fry. Fry

was afforded opportunity, of which they availed themselves, to thoroughly cross-examine each of these witnesses.

One of the affiants, James Johnstone, testified that he lives four blocks from the Fry plant. He observed gray smoke and was aware of the odor of asphalt and felt emanating from the Fry smoke stacks. He testified that the smoke and odor "makes you sick * * * it makes your eyes water, parches your throat." He observed the smoke and was aware of the odor prior to February 17, 1971, and subsequently. He testified that the odor in the park across from the Fry plant is "bad," and that he could not jog in the park because of the odor and smoke.

Another affiant, Mary Younkers, who lives three blocks from Fry, testified that on April 16, 1971, she was in the park and was aware of odors emanating from Fry. The odors pervaded the area and caused her to leave the park. She also was aware of the odor in her home subsequent to February 17, 1971, and it caused her headaches and nausea.

■■ Other witnesses testified that the odors being emitted from the Fry smoke-stacks were "obnoxious" or "disagreeable." More importantly, witnesses testified that the odor caused headaches, nausea, coughing and eye irritation. Therefore, we conclude that the evidence adduced supports a finding of unreasonable interference with the enjoyment of life and property of the residents. Section 33(c) of the Act provides:

> "In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions * * *."

We note that, in its order, the Board failed to demonstrate compliance with this section in that the order did not indicate consideration of the factors enumerated therein. Fry does not raise this issue on appeal, and moreover, we are of the opinion that sufficient evidence was adduced as to each enumerated factor to support the Board's findings.

Section 33(c)(1) concerns "the character and degree of injury to, or interference with the protection of health * * *." The testimony of the affiants, as previously set forth in this opinion, is sufficient to indicate the character and degree of injury. Concerning "the social and economic value of the pollution source" (§ 33(c)(2)), Fry introduced evidence of the operation of the plant. As to the "suitability or unsuitability of the pollution source to the area in which it is located * * *" (§ 33(c)(3)), evidence was adduced as to the presence in the general area of the Chicago Metropolitan Sanitary District slush ponds, The Trumbull Asphalt Co. and the Corn Products Co. plant, in addition to residences and a public park. Finally, evidence concerning "the technical practicability and economic reasonableness of reducing or eliminating the emissions * * * resulting from such pollution source" (§ 33(c)(4) was adduced

through testimony regarding the availability of pollution devices to asphalt plants and the existence of pollution control devices on Fry plants in other areas of the country. In addition, the Fry plant manager testified that no emission control devices were employed, but that plans for installation of such devices had been made.

Based upon the evidence previously alluded to, the Board properly concluded that air pollution caused by Fry unreasonably interfered with enjoyment of life and property, and that Fry is in violation of section 9(a) of the Act. Accordingly, we affirm that part of the order of the Pollution Control Board ordering Fry to comply with section 9(a) of the Act; we reverse that part of the order finding Fry in violation of the Board's Rules and Regulations. Because the Board imposed a penalty of $50,000 for violations of the Act *and* the Regulations, and did not indicate what portion of the penalty was imposed for the statutory violation, we remand this cause to the Board for a redetermination of an appropriate penalty.

Affirmed in part; reversed in part; remanded in part.

HAYES, P. J., and LEIGHTON, J., concur.