(No. 78570.—

*In re* APPLICATION FOR JUDGMENT AND SALE OF DELINQUENT PROPERTIES FOR THE TAX YEAR 1989 (People *ex rel.* John Lotus Novak, Appellant; ATI Carriage House *et al.*, Appellees).

*Opinion filed September 21, 1995.*

James E. Ryan, State's Attorney, and Barbara A. Preiner and Anna B. Harkins, Assistant State's Attorneys, of Wheaton, for appellant.

James A. Geraghty, of Wheaton, for appellees ATI Carriage House *et al.*

Robert M. Sarnoff and Michael F. Baccash, of Sarnoff & Baccash, of Chicago, for appellees Applewood Estates, Ltd., *et al.*

JUSTICE FREEMAN delivered the opinion of the court:

In this Rule 302(a) (134 Ill. 2d R. 302(a)) appeal, we decide a case of first impression concerning the constitutionality of section 16 of the Local Government Debt Reform Act (Debt Reform Act) (Ill. Rev. Stat. 1989, ch. 17, par. 6916). The circuit court of Du Page County ruled that section 16 represents an unconstitutional delegation of legislative authority to the county clerk. We determine that section 16 is constitutional with regard to that charge and reverse the trial court's judgment.

## BACKGROUND

The governing boards of six taxing districts (districts), located in Du Page County, adopted levy ordinances to collect taxes for the payment of indebtedness on certain general obligation bonds. The ordinances were adopted pursuant to section 16 of the Debt Reform Act. (Ill. Rev. Stat. 1989, ch. 17, par. 6916.) In the case of the school districts, the ordinances were also supportable allegedly under the School Code (Ill. Rev. Stat. 1989, ch. 122, par. 17—11). Although the record does not disclose whether or when the districts actually filed the ordinances with the county clerk, the parties have not contested that the ordinances were filed sometime after December 31, 1989. The districts issued bonds as follows: Village of Westmont, Bloomingdale Park District, Itasca Park District on February 1, 1989; School District 58 on January 30, 1990; and School Districts 63 and 100 on February 1, 1990. In 1990, the county clerk extended the districts' taxes for the year 1989, and included amounts for the payment of indebtedness on the bonds.

In 1990, owners of real properties located in the

districts (objectors) paid their 1989 taxes under protest and filed objections in the county collector's "Application for Judgment and Sale of Delinquent Properties for the Tax Year 1989." The application for judgment and sale was filed in the circuit court. (See Ill. Rev. Stat. 1989, ch. 120, pars. 675, 716.) Each objector disputed the levies. They claimed that levies adopted and presented for filing after December 31 of the tax year, the date that the county clerk is to close tax books, are void. (See Ill. Rev. Stat. 1989, ch. 120, par. 653.) They also claimed that, under section 16, the districts did not possess the authority to adopt the levy ordinances absent the agreement of the county clerk. They asserted that section 16 consequently represents an unconstitutional delegation of legislative authority to the county clerk in violation of the separation of powers doctrine (Ill. Const. 1970, art. II, § 1) and the structure and power of the legislature (Ill. Const. 1970, art. IV, § 1).

John Lotus Novak, treasurer and *ex-officio* county collector of Du Page County (collector), moved for partial summary judgment as to each objection. The circuit court denied the motion without providing a specific basis for its ruling and sustained the objections. The collector then filed a motion for reconsideration, raising an additional defensive argument as to the school districts and requesting clarification of whether the circuit court's ruling was that section 16 was unconstitutional or was that the levies were untimely filed. The circuit court denied the motion. The collector filed a second motion for reconsideration, citing subsequent appellate authority. The circuit court denied this motion, also. The collector appealed and the causes were consolidated. Following remand to the circuit court for clarification of its ruling, the appellate court transferred the cause to this court pursuant to Rule 365 (134 Ill. 2d R. 365). This court exercises jurisdiction pursuant to Rule 302(a) (134

Ill. 2d R. 302(a)). Two objectors, ATI Carriage House *et al.* and Applewood Estates, Ltd., *et al.*, have filed briefs.

### Section 16 of the Debt Reform Act
Section 16, entitled "Levy for bonds," provides:

"A governmental unit may levy a tax for the payment of principal of and interest on general obligation bonds at any time prior to the issuance of such bonds, subject to the agreement of the county clerk that the county clerk will accept the filing of the ordinance levying such tax notwithstanding that such time is subsequent to the end of the calendar year next preceding the calendar year during which the tax will be collected. In extending taxes for general obligation bonds, the county clerk shall add to the levy for debt service on such bonds an amount sufficient, in view of all losses and delinquencies in tax collection, to produce tax receipts adequate for the prompt payment of such debt service." Ill. Rev. Stat. 1989, ch. 17, par. 6916.

### ANALYSIS
The circuit court sustained the tax objections and denied the collector's motion for partial summary judgment based on the argument that section 16 represents an unconstitutional delegation of legislative authority to the county clerk. The objectors claimed that, within the provision, the term, "subject to," makes the levy ordinance process contingent on the agreement of the county clerk to accept the ordinance for filing. (Ill. Rev. Stat. 1989, ch. 17, par. 6916.) The objectors claimed that the provision also grants the county clerk, a ministerial officer, unbounded discretion in accepting the filing of the levy ordinance.

In a tax objection case, it is presumed that the assessed taxes are correct, and the objector bears the burden of proving facts to sustain his objection. (*People ex rel. McDonough v. New York Central R.R. Co.* (1933), 355 Ill. 80.) The burden of proof as to the invalidity of a tax rests with the objector. (*People ex rel. Brenza v. Fleet-*

*wood* (1952), 413 Ill. 530.) Furthermore, all statutes are presumed to be constitutional and the challenging party bears the burden of clearly establishing the statute's unconstitutionality. *Rehg v. Illinois Department of Revenue* (1992), 152 Ill. 2d 504; see also *Opyt's Amoco, Inc. v. Village of South Holland* (1992), 149 Ill. 2d 265.

## County Clerk's Authority

On appeal, the collector asserts that the "subject to" language in section 16 does not change substantively the legislative aspects of tax collection. The collector argues that section 16 merely allows the county clerk increased authority in accepting the filing of a levy ordinance after the levy has already been made. The collector cites *In re Collector's Application for Judgment for Taxes Paid Under Protest for the Year 1988* (1992), 223 Ill. App. 3d 896 (hereinafter, *Crosfield Chemicals*), as deciding the construction issue here.

The collector asserts that the term "subject to" is susceptible of several ordinary meanings and, depending on its context, can indicate a subordination of rights, an imposition of liability, or a conditional promise. The collector argues that the term can also indicate simply a subsequent and nonsubordinating condition as is the case in real estate transfers where a conveyance is stated as "subject to" a mortgage or a lien of taxes. See *Life Savings & Loan Association of America v. Bryant* (1984), 125 Ill. App. 3d 1012.

The collector refers to the statutory construction principle requiring the harmonization of statutes relating to the same subject so as to give effect to their presumed legislative intent. (See *Williams v. Illinois State Scholarship Comm'n* (1990), 139 Ill. 2d 24, 52.) The collector contends that the Debt Reform Act was intended to allow taxing districts a degree of timing flexibility in the sale and issuance of bonds so that they might financially benefit by obtaining lower interest

rates. The collector claims that, with the Act, certain pre-Act avoidance practices by taxing districts are no longer necessary.

The objectors respond by rejecting the construction of section 16 adopted in *Crosfield Chemicals*. They assert simply that the "subject to" language of section 16 makes both the creation of a levy and the filing of the ordinance dependent on the county clerk's agreement.

In determining the constitutionality of a statute, a reviewing court must first ascertain the statute's meaning by applying ordinary rules of construction and then decide whether, as construed, the statute comports with constitutional requirements.

In interpreting a statute, the primary rule of construction, to which all other rules are subordinate, is to ascertain and give effect to the true intent and meaning of the legislature. (See *Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189.) Courts should look to the language of the statute as the best indication of legislative intent, giving the terms of the statute their ordinary meaning. (See *Opyt's Amoco*, 149 Ill. 2d at 277.) Whenever possible, each word or phrase in a challenged statute is to be given some reasonable meaning. (*Opyt's Amoco*, 149 Ill. 2d at 277.) Where the meaning of a statute is unclear from the statutory language itself, a court may look beyond the language employed and consider the purpose of the law and the evils the law was designed to remedy. See *Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76.

If there is doubt as to the construction to be given a legislative enactment, the doubt must be resolved in favor of an interpretation which supports the statute's validity (see *Rehg v. Illinois Department of Revenue*, 152 Ill. 2d at 512); statutes will be construed to avoid an unconstitutional result (see *Sayles v. Thompson* (1983), 99 Ill. 2d 122). Statutes should also be construed in conjunc-

tion with other statutes addressing the same subject. *People v. Badoud* (1988), 122 Ill. 2d 50, 55.

Additionally, in construing statutes relating to the levying and collection of taxes, this court has sought to give them a reasonable and commonsense meaning, so as to avoid making it difficult or impossible for taxes to be levied and collected. *People ex rel. Nash v. Chicago & Northwestern Ry. Co.* (1935), 359 Ill. 435, 439.

The term "subject to" has a number of ordinary meanings depending on context. "Subject to" may mean either "contingent or conditional upon," or it may also mean "exposed to." (See Websters New World Dictionary of the American Language 1417 (2d coll. ed. 1974).) The term is described as "likely to be conditioned, affected, or modified in some indicated way" or "having a contingent relation to something and [usually] dependent on such relation for final form, validity, or significance." (See Websters Third New International Dictionary 2275 (1993).) From these sources, it is clear that the term usually is indicative of a subordinate relationship, but that it can also denote a nonsubordinate or equivalent relationship which is merely qualified in some manner. Accordingly, the term, as used in section 16, does not necessarily indicate that the levy process is subordinate to or dependent upon an agreement of the county clerk to accept the filing of the ordinance. While, clearly, the term establishes some manner of relationship between levying and the agreement of the county clerk, the relationship is better considered by examining context.

Under the doctrine of the last antecedent, relative or qualifying words or phrases in a statute serve only to modify words or phrases which are immediately preceding and do not modify those which are more remote. (See *City of Mount Carmel v. Partee* (1979), 74 Ill. 2d 371; *People v. Thomas* (1970), 45 Ill. 2d 68.) Applying

this doctrine, it is a governmental unit's tax levying for the payment of bond indebtedness "at any time" before bonds are issued which is qualified by a county clerk's agreement to accept the filing of an ordinance at that time.

More importantly, however, the subsequent term within the provision, "notwithstanding that such time," refers specifically to the previously stated time frame, "at any time," when the particular levy is made and its related ordinance filed. This subsequent term serves to limit the county clerk's opportunities for agreeing to accept filing to only those instances where the attempted filing time is beyond the usual date for closure of the tax books. See Ill. Rev. Stat. 1989, ch. 120, par. 643.

The appellate court in *Crosfield Chemicals* similarly construed the language of section 16 with relation to the timing of filing. "The clerk's only decision was whether the tax levy has been filed prior to the finalizing of the tax books ***." (*Crosfield Chemicals*, 223 Ill. App. 3d at 901.) *Crosfield Chemicals* did not adhere to the literal language in construing section 16, but relied on a reasonable construction of the provision in light of the general purposes and objects of the legislation. (See *Crosfield Chemicals*, 223 Ill. App. 3d at 899.) *Crosfield Chemicals* also considered other statutes which addressed the clerk's role in the tax collection process. (See *Crosfield Chemicals*, 223 Ill. App. 3d at 899.) Because section 16 is less than clear, we engage in similar analysis.

The purposes of the Debt Reform Act are expressed in section 2 (Ill. Rev. Stat. 1989, ch. 17, par. 6902). In section 2, the General Assembly expressed its findings that there had been significant change in the bond market and its practices, concerning the issuance of local governmental bonds, and that various inconsistent and outdated Illinois laws resulted in higher costs to

governmental units due to the sale and issuance of bonds at unnecessarily high rates. The General Assembly therefore found it advisable and in the best interests of residents of local governmental units to provide supplemental authority "regarding the issuance and sale of bonds to accommodate such market practices and the provisions of current federal income tax law." Ill. Rev. Stat. 1989, ch. 17, par. 6902(d).

The Revenue Act of 1939 provides the procedural framework for the levying, valuation, assessment, extension and collection of property taxes by local governmental units. (Ill. Rev. Stat. 1989, ch. 120, par. 482 *et seq.*) The Revenue Act also prescribes the duties, responsibilities and role of the county clerk in that process. (Ill. Rev. Stat. 1989, ch. 120, pars. 608 through 610.1, 638.) The Illinois Municipal Code provides the actual authority for municipalities to levy taxes (Ill. Rev. Stat. 1989, ch. 24, par. 8—3—1), and to issue bonds payable with taxes (Ill. Rev. Stat. 1989, ch. 24, par. 8—4—1). Similarly, the Park District Code provides the authority for park districts to levy taxes (Ill. Rev. Stat. 1989, ch. 105, par. 5—1), and the School Code provides authority for schools to levy taxes for general purposes (Ill. Rev. Stat. 1989, ch. 122, pars. 17—1, 17—2) and to pay indebtedness on bonds (Ill. Rev. Stat. 1989, ch. 122, par. 19—12). Section 16 of the Local Government Debt Reform Act provides supplemental authority to such local governmental units to collect taxes for the payment of general obligation bonds. (Ill. Rev. Stat. 1989, ch. 17, par. 6916.) Section 16 prescribes the role of the county clerk in this process. As such, even though debt-service levies constitute a procedure separate and distinct from the annual levy (*Board of Education of Township High School District No. 211 v. Kusper* (1982), 92 Ill. 2d 333, 338), the Revenue Act and section 16 are *in pari materia* and may be construed together to determine the intent of

the legislature. (*Cf. People ex rel. Joseph v. Pennsylvania R.R. Co.* (1959), 18 Ill. 2d 61 (section 638 of Revenue Act and section 17—11 of the School Code construed together).) Illinois common law also speaks to the intended scheme of property taxation.

A local governmental unit vested with the power to tax is charged with the duty of ascertaining and fixing the sum of money necessary for its purposes, and its action in ordering or directing that such sum be raised constitutes the levy. (*People ex rel. Carr v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.* (1925), 316 Ill. 410, 413-14; see also *People ex rel. Haas v. Amax Zinc Co.* (1984), 130 Ill. App. 3d 580, 585 (tax levy occurs at time that levy ordinance or resolution is passed or adopted by local taxing body).) The time required by statute for making tax levies is mandatory. (See *People ex rel. Joseph v. Pennsylvania R.R. Co.*, 18 Ill. 2d at 63; *People ex rel. Ward v. Chicago & Eastern Illinois Ry. Co.* (1936), 365 Ill. 202, 206.) Consequently, at the point that a levy ordinance or a copy of the levy is presented for filing to the county clerk, the act of levying by the local governmental unit is complete. Moreover, any error or informality of an officer in making, certifying or filing the levy which does not affect the substantial justice of the levy does not vitiate or avoid the levy. See Ill. Rev. Stat. 1989, ch. 120, par. 717.

"After a tax is once levied or imposed,—*i.e.*, ordered to be laid,—further proceedings, such as extending, assessing and collecting the tax, are administrative." (*People ex rel. Carr v. Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co.*, 316 Ill. at 414.) "The county clerk extends taxes where the levy is complete. *** The duties which he is required to perform in the extension of taxes are prescribed by law, and are neither legislative nor judicial but purely ministerial in character." (*People ex rel. Carr v. Pittsburgh, Cincinnati, Chicago & St. Louis*

*Ry. Co.*, 316 Ill. at 414.) A county clerk has no power to levy taxes or determine whether taxes have been legally assessed; his duties in the extension of taxes are purely ministerial. (*City of Rockford v. Gill* (1979), 75 Ill. 2d 334, 342.) The county clerk's duty is to fix the amount of taxes that will be extended. (See *People ex rel. Toman v. Chicago & Northwestern Ry. Co.* (1941), 377 Ill. 547.) "It is the levy which creates the tax, and the extension by the county clerk is merely a formal step necessary to enable the authorities to collect the tax." *People ex rel. Loehr v. Missouri Pacific R.R. Co.* (1922), 301 Ill. 541, 547.

The filing of ordinances and resolutions directing extension of the tax levy is jurisdictional and authorizes the county clerk to act. (See Ill. Rev. Stat. 1989, ch. 120, par. 643; *People ex rel. Chamberlain v. Chicago, Burlington & Quincy R.R. Co.* (1943), 383 Ill. 212, 216.) Failure of the governmental unit to file the required documents directing the extension of taxes authorizes the county clerk to refuse to extend the levy until such filing occurs. (See Ill. Rev. Stat. 1989, ch. 120, par. 643.) However, any error or informality in certifying or filing the levy documents not affecting the substantial justice of the levy may be corrected by subsequent amendment. See Ill. Rev. Stat. 1989, ch. 120, par. 717; *People ex rel. Davis v. Chicago, Burlington & Quincy R.R. Co.* (1971), 48 Ill. 2d 176.

Pursuant to the Revenue Act, the county clerk has a duty to honor the levy ordinance and may extend only those taxes which are legally authorized. (*People ex rel. Carter v. Touchette* (1955), 5 Ill. 2d 303, 306; see also Ill. Rev. Stat. 1989, ch. 120, pars. 643, 644; *People ex rel. Village of Inverness v. Barrett* (1962), 38 Ill. App. 2d 334.) A county clerk may not refuse to extend the levy in a legally authorized amount on the ground that the levy is void for failure to comply with statutorily

prescribed procedures. (*City of Rockford*, 75 Ill. 2d at 342.) However, the refusal of the county clerk to either extend taxes (*People ex rel. Village of Inverness*, 38 Ill. App. 2d 334), or his inadvertent failure to extend taxes on certain property (*People ex rel. Loehr v. Missouri Pacific R.R. Co.* (1922), 301 Ill. 541, 547) does not vitiate the tax levy. If a tax is prevented from being collected for any year because of an omission, error or other cause, the taxable amount due may be added to the following year's taxes. Ill. Rev. Stat. 1989, ch. 120, par. 703.

County clerks begin the process of extending taxes by preparing the collector's books (applying final multiplier as certified by Department of Revenue, after receipt of assessments from the county's board of review or board of appeals and application of an equalizer factor received from the Department of Revenue). (Ill. Rev. Stat. 1989, ch. 120, pars. 639 through 654.) County clerks have discretion to add small amounts for uncollectible taxes before calculating the tax rate. The actual percentage rests in the county clerk's discretion. *People ex rel. Nash v. Northwestern Mutual Life Insurance Co.* (1935), 361 Ill. 248.

The Revenue Act further provides that the clerks shall deliver the tax collection books to the collectors by December 31 or as soon thereafter as the collectors are duly qualified. (Ill. Rev. Stat. 1989, ch. 120, par. 653.) This court has expressly declined to hold that the statute's command to deliver the tax books on the date specified is one which is mandatory. (*People ex rel. Ward v. Chicago & Eastern Illinois Ry. Co.*, 365 Ill. at 206.) While, as mentioned previously, failure to certify or file a tax levy ordinance by the time specified for filing is not fatal, tax levy ordinances must be filed by the time that the county clerk closes the tax collection books. (*People ex rel. Euziere v. Rice* (1937), 290 Ill. App. 514.)

With delivery of the books, the county clerks certify the tax rates for the various districts to the county and town collectors. (Ill. Rev. Stat. 1989, ch. 120, par. 654.) Taxes are not due until the tax books are delivered into the hands of the collectors. *Sexton v. Sikking* (1900), 90 Ill. App. 667.

Considering the purposes of the Debt Reform Act, the tax collection scheme of the Revenue Act, the prescribed duties of the county clerk, and case law interpreting the scheme as well as the clerk's duties, section 16 may be reasonably construed as follows. A governmental unit may levy a tax for the payment of bond indebtedness at any time before the bonds are issued, but the county clerk may decide whether to extend the tax for the next collection when the usual time has passed for closing and delivering the tax books.

Further, we conclude that, as construed, section 16 does not authorize encroachment by the county clerk into legislative processes. Clearly, the act of filing the levy ordinance does not affect substantively a governmental unit's authority in levying. Concomitantly, a county clerk's decision to accept the filing of the levy ordinance, tantamount to accepting jurisdiction to extend the tax, could not intrude the clerk into the legislative process of levying the tax. We find no constitutional infirmity on this basis.

### Discretionary Guidelines

The collector asserts that the county clerk is provided with sufficient guidelines under section 16 and the Revenue Act in accepting collection-year filings of levy ordinances. The collector submits that the Revenue Act provides guidelines and extensive regulation of the county clerk in extending taxes. According to the collector, the county clerk's acceptance of a collection-year filing is bounded by the requirement that the filing be made before the actual closure of the books yet in suf-

ficient time for computation of the tax rate before the designated date for mailing tax bills (Ill. Rev. Stat. 1989, ch. 120, par. 671). The collector asserts that these guidelines meet the standards of *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361. The collector claims that any discretion given the county clerk under section 16 only goes to the timing of any acceptance as opposed to the fact of acceptance.

The objectors argue that the county clerk is granted discretion under section 16 to accept or reject the filing of "late" bond levies for any reason he deems appropriate. By way of contrast, the objectors refer to section 17—3.2 of the School Code, which provides for supplemental levies after the last day of the tax calendar year. (Ill. Rev. Stat. 1989, ch. 122, par. 17—3.2.) According to the objectors, section 17—3.2, unlike section 16, allows for the making and filing of levies after the last day of the tax year calendar, but grants no discretion to the county clerk with respect to accepting the filing. The objectors also refer to section 17—11 of the School Code as similarly contrasting with section 16. Ill. Rev. Stat. 1989, ch. 122, par. 17—11.

The objectors disagree that any guidelines associated with section 16 meet the measure of those articulated in *Stofer v. Motor Vehicle Casualty Co.* The objectors contend that the stated purposes of the Debt Reform Act are vague, and section 16 does not explain why permitting the post-tax calendar year filing of a levy ordinance is beneficial. The objectors contend that there are no guidelines in the Debt Reform Act or in section 16 to assist the county clerk in accepting or rejecting "late" filings.

When the legislature vests discretionary authority in an administrative officer, intelligible standards must be provided to guide the officer in the exercise of his discretion. (See *Balmoral Racing Club, Inc. v. Illinois*

*Racing Board* (1992), 151 Ill. 2d 367, 391; *Bio-Medical Laboratories, Inc. v. Trainor* (1977), 68 Ill. 2d 540, 551.) A statute conferring discretionary authority upon an administrator without properly defining the terms under which discretion is to be exercised is void as an unlawful delegation of legislative authority. (*Rodman v. Department of Revenue* (1972), 51 Ill. 2d 314, 318.) However, the legislature need not establish absolute criteria whereby every detail and circumstance necessary in the enforcement of the law is anticipated. See *Memorial Gardens Association, Inc. v. Smith* (1959), 16 Ill. 2d 116, 131.

The objectors imply that statutorily permitted collection-year filings of tax levies are unusual and that the county clerk's authority thereunder must therefore be strictly regulated and guided. Actually, however, the bond levy ordinance and collection process set out in the Revenue Act and various enabling legislation generally provides for the filing of such ordinances without specifying any particular time for filing. (See Ill. Rev. Stat. 1989, ch. 122, par. 19—7 ("[w]henever any school district *** is authorized to issue bonds, the recording officer thereof shall file").) While the objectors are correct in pointing out that under these provisions the county clerk is not granted discretion to accept or reject such filings, we believe that it is the clerk's very inability to exercise discretion under such provisions which section 16 now addresses.

With section 16, the General Assembly recognized that the timing of bond levies, their related ordinances and the issuance of the particular bonds was critical in order to avoid additional costs to local governmental units. However, affording flexibility in that area, by allowing collection-year filings of tax ordinances, may impact negatively on the efficiency of the tax assessment, valuation, extension and collection process. The

impact of late levies on the efficiency of the tax collection process is generally recognized. In declining to uphold a late levy, this court stated:

"The process of assessing property for taxation and the levy and extension of taxes against that property is a complex one involving thousands of taxing bodies and the cooperation of numerous public officers. Delay at any stage of the process is likely to result in substantial added expenses in the form of extra employees or overtime pay required by county clerks and treasurers who receive late valuation statistics from assessing officials or delayed levy totals from taxing bodies: and when the distribution of taxes is untimely, taxing bodies are burdened with the expense and interest of tax anticipation warrants essential to their continued operation. Were we somehow to sustain this tardy levy, we would simply add greater uncertainty and confusion in an already less than efficiently operating system." *Board of Education of Community Unit School District No. 16 v. Barrett* (1977), 67 Ill. 2d 11, 14-15.

Moreover, it is generally recognized that the county clerk must have a reasonable time for the preparation of the tax books and the extension of taxes after a levy is made. "The General Assembly has required the assessor's books to be returned by a specified day, and all taxes to be levied by a designated period, that the clerk may, after that time, and before the day he is required to deliver the books, have time to prepare them and extend all the taxes." (*Mix v. People ex rel. Pierpoint* (1874), 72 Ill. 241, 244.) Section 16 merely allows the county clerk the opportunity to decide whether a collection-year levy ordinance is filed in sufficient time to be included in the tax extension process for collection in that particular year. The guidelines to assist the county clerk in that decision are necessarily found within the process as prescribed within the Revenue Act and reviewed here previously in detail. Such standards need not be specific or particular. (*Cf. Rodman v. Depart-*

*ment of Revenue* (1972), 51 Ill. 2d 314 (use of word "substantially" to guide administrative discretion held sufficient); *Metropolitan Sanitary District of Greater Chicago v. United States Steel Corp.* (1968), 41 Ill. 2d 440; *Village of Itasca v. Luehring* (1954), 4 Ill. 2d 426.) It would be impossible and undesirable for the legislature to draft rigid nondiscretionary standards which would embrace each and every decision to extend taxes for ordinances filed in the collection year, for the surrounding circumstances would seldom be the same. *Cf. Hepner v. County Board of School Trustees* (1956), 8 Ill. 2d 235, 242.

The parties refer to *Stofer v. Motor Vehicle Casualty Co. Stofer* held that the legislature, in delegating regulatory authority to an administrative agency or official, must sufficiently identify: (1) the persons and activities potentially subject to regulation; (2) the harm sought to be prevented; and (3) the general means intended to be available to the administrator to prevent the identified harm. (*Stofer*, 68 Ill. 2d at 372.) While *Stofer* concerned the delegation of authority to an official to develop an entire scheme of regulation, its standards can have application to the delegation to an official of a single regulatory decision.

In this case, it is quite clear from section 16 that the persons and activities subject to the county clerk's decision are residents of governmental units and persons involved in the tax extension process and the activities of that process, itself. The harm expressly sought to be prevented by section 16 is that concerning the incursion of costly interest rates. The additional harm sought to be prevented, one generally known and accepted, concerns the avoidance of inefficiency and delay in extending and collecting taxes. The general means to prevent this harm is the legislated option to extend taxes for collection, that arise from a collection-year

ordinance filing, during that particular year or allow their extension and collection to occur the following year. With section 16 and the Revenue Act, we believe the legislature has sufficiently identified the bounds of the county clerk's decision.

In conclusion, we determine that the Debt Reform Act in combination with the Revenue Act provides sufficient guidelines to assist the county clerk in accepting a collection-year filing of a levy ordinance under section 16. The county clerk is not allowed unbounded discretion under the Debt Reform Act and the Revenue Act, and section 16 does not thereby result in an improper delegation of legislative authority to the county clerk. The judgment of the circuit court, denying the collector's motion for partial summary judgment and sustaining the tax objections based on the Debt Reform Act, is accordingly reversed.

*Reversed.*